42 P.3d 615

**A.H. BELO CORPORATION, a Texas corporation and Shelly Miller, an individual, Plaintiffs–Appellees,**

v.

**MESA POLICE DEPARTMENT, a public body, and the City of Mesa, a public body, Defendants–Appellants.**

**No. 1 CA–CV 00–0200.**

Court of Appeals of Arizona, Division 1, Department C.

March 26, 2002.

---

Brown & Bain, P.A. By Daniel C. Barr, John L. Blanchard, Phoenix, Attorneys for Plaintiffs–Appellees.

City of Mesa Attorney's Office By Catherine M. Shovlin, Deputy City Attorney, Mesa, Attorneys for Defendants–Appellants.

## OPINION

FIDEL, Judge.

¶ 1 A taped 911 call regarding an injured child is the subject of this public records dispute. We consider whether, in light of the privacy interests of the child and his family, the City of Mesa has adequately satisfied its public records disclosure obligation by providing a transcript of the call to KTVK–TV,[1] or whether, as the station claims and the trial court determined, Mesa must provide a copy of the audiotape.

### BACKGROUND

¶ 2 On February 29, 2000, Nancy Walsh, a babysitter, called a 911 operator to report that Dominic D., then sixteen months old, had fallen from his crib. As Walsh awaited emergency personnel, she frantically described Dominic's condition, pleading for help and screaming that he might die; in the background, the child's cries and whimpers could be heard. Walsh was eventually indict-

---

1. Plaintiff A.H. Belo Corporation is the owner of KTVK–TV; Plaintiff Shelly Miller is an executive producer with KTVK–TV. We will refer to them collectively as "KTVK–TV" or "the station."

ed on four counts of child abuse and attempted child abuse.[2]

■ ¶ 3 KTVK–TV sent a public-records request to the Mesa Police Department, seeking both a transcript of the 911 call and a copy of the audiotape. When Mesa provided the transcript, but refused to furnish the tape, KTVK–TV filed a special action[3] seeking the tape. Mesa opposed the action. After holding an evidentiary hearing and listening to the tape *in camera,* the trial court ordered Mesa to release the tape. This appeal followed. Whether the station is entitled to release of the 911 tape under the Public Records Act is a question of law that we independently review. *Cox Ariz. Publ'ns, Inc. v. Collins,* 175 Ariz. 11, 14, 852 P.2d 1194, 1197 (1993).

### THE ADEQUACY OF ALTERNATIVE MEANS

¶ 4 The purpose of our Public Records Act is "to allow citizens 'to be informed about what their government is up to.'" *Scottsdale Unified Sch. Dist. v. KPNX,* 191 Ariz. 297, 302–03, ¶ 21, 955 P.2d 534, 539–40 (1998) (quoting *United States Dep't of Justice v. Reporters Comm. for Freedom of the Press,* 489 U.S. 749, 773, 109 S.Ct. 1468, 103 L.Ed.2d 774 (1989)).

■ ¶ 5 In support of this purpose, the Act provides for access to public records upon request. Such access is not unqualified, however, for "an unlimited right of inspection might lead to substantial and irreparable private or public harm." *Carlson v. Pima County,* 141 Ariz. 487, 491, 687 P.2d 1242, 1246 (1984). Instead, Arizona imposes a presumption in favor of disclosure; to defend a refusal to release a public record, the government must demonstrate that the policy in favor of public disclosure and access is outweighed by considerations of "confidentiality, privacy, or the best interests of the

state." *Id.; see also Cox,* 175 Ariz. at 14, 852 P.2d at 1197.

■ ¶ 6 In balancing considerations such as privacy against the general public interest in disclosure, it is relevant to examine whether the information in question is available through alternative means. As our supreme court has explained, just as "the public interest increases when there is no other available way to obtain the information," it *"correspondingly decreases when 'alternative means' of receiving the information exist." Scottsdale Unified Sch. Dist.,* 191 Ariz. at 303, ¶ 24, 955 P.2d at 540 (emphasis added).

¶ 7 To test the adequacy of alternative means—in this case, the transcript instead of the tape—it is useful to inquire whether the purpose of the Public Records Act is satisfied by access to the alternative source of information or would be better served by access to the record that has been withheld. Tellingly, however, KTVK–TV does not contend that the tape would assist our citizens "to be informed about what their government is up to" in any manner that the transcript does not achieve. To the contrary, counsel for KTVK–TV, though asked the question repeatedly at oral argument, did not suggest that access to the tape would advance that purpose to the slightest degree.

¶ 8 Instead, KTVK–TV seeks the tape to present "images of urgency" that a transcript would not alone provide. And the tape does provide images of urgency, to be sure. At one point, Walsh pleads, "Dominic, Dominic, Dominic, Dominic, Dominic, Dominic. God, please help me." At another, she cries, "No, no, he's not crying. The eyes is not closed, and is open—it's going to be dead."[4] The evidentiary record contains other, similar, images of urgency that KTVK–TV has broadcast from 911 tapes: a three-year-old child whose mother had a seizure, a woman being attacked by a dog, a father who re-

---

2. While this appeal was pending, Walsh entered a guilty plea to two counts of the indictment and was sentenced.

3. Pursuant to A.R.S. § 39–121 (2001), "Public records and other matters in the custody of any officer shall be open to inspection by any person at all times during office hours." Pursuant to A.R.S. § 39–121.02(A) (2001), a person denied

access to a public record "may appeal the denial through a special action in the superior court."

4. Although the transcriber found some portions of the tape inaudible and noted these segments on the transcript, these segments of the tape are simply cries and pleas by Walsh somewhat more garbled than the ones transcribed.

turned home to find his baby's throat slashed by the babysitter, frantic cries for help over a cell phone from a woman shot in her car. The real suffering of others has undeniable broadcast value—it must excite some voyeuristic element in our makeup. The purpose of broadcasting such moments is surely not, however, to inform our citizens what their government is up to.

¶ 9 KTVK–TV, however, relying on the presumption in favor of disclosure, argues that it is not *obliged* to show that access to a given record would advance the purpose of the Public Records Act when—as here, in its contention—the government has not put forth a cognizable countervailing interest that would be served if disclosure were withheld. We agree in part.

 ¶ 10 We agree that unless the government puts forward an interest that justifies withholding access to a public record, a person or entity seeking access to the record need not demonstrate what purpose such access would serve. We agree as well that, unless the government puts forward an interest that justifies withholding access to a public record, it does not matter that the information contained within the record is available by alternative means. We disagree, however, with KTVK–TV's contention that Mesa has failed to put forward a sufficient countervailing interest in this case.

### PRIVACY INTERESTS OF DOMINIC AND HIS FAMILY

 ¶ 11 Although Mesa asserted a number of countervailing interests before the tri-

al court, we consider the privacy of the injured child and his family dispositive.[5]

¶ 12 KTVK–TV denies that Dominic and his family have a cognizable privacy concern, but the evidence shows otherwise. The tape not only contains the babysitter's frantic pleas for help and descriptions of the child's symptoms; it also contains the cries and whimpers of the child. Dominic's mother testified at the hearing that broadcasting the tape would interfere with her family's healing processes and "remind [her] of that painful day." She said that it would be hard to hear her son's "helpless" cries on the tape. Mesa reinforced her testimony with a letter she had written expressing concern that, if played to the public, the 911 call could "torment" her son. In short, and understandably, Dominic's parents seek to stop their child's private suffering from being stuff for public broadcast and display.

¶ 13 The trial court did "not dispute or minimize the emotional impact the airing of the tape may have on the victim and his family." The trial court, however, deemed it a matter for the legislature, not the court, to decide whether such an interest could overcome the presumption favoring disclosure of public records.

¶ 14 We disagree. Our supreme court has already determined that privacy interests *can* overcome the presumption in favor of disclosure of public records. *Carlson,* 141 Ariz. at 491, 687 P.2d at 1246; *see also Scottsdale Unified Sch. Dist.,* 191 Ariz. at

**5.** Mesa advanced, among other countervailing interests, the public interest in protecting the efficacy of the 911 system. At the hearing, Mesa attempted to support this argument with evidence, including the testimony of Dr. Robin Ford, a psychologist who has treated trauma victims significantly re-traumatized after hearing 911 broadcasts. In its offer of proof, Mesa stated that Dr. Ford would testify that such broadcasts "can have a negative impact on the public's willingness to call the 911 safety system in instances where they decide that the public release of the information would be more embarrassing to them than their actual need for help or their need for law enforcement to respond." The trial court ruled such evidence irrelevant. Mesa argues on appeal that the trial court erred in excluding such evidence. It also argues that by releasing the transcript of the 911 call in ques-

tion rather than the tape, it struck an appropriate balance between protection of the public's right to know and protection of the efficacy of the 911 system. In support of its argument, Mesa cites *Bowling v. Brandenburg,* 37 S.W.3d 785, 788 (Ky.App.2000), in which the Kentucky Court of Appeals recognized that the practice of releasing 911 tapes might "have a chilling effect on those who might otherwise seek assistance because they would become subject to ... retaliation, harassment, or public ridicule." Because we find the privacy interest of Dominic and his family sufficient to allow withholding of the 911 tape, however, we merely note, but need not address, these arguments. Nor do we address Mesa's argument that withholding the tape served the public interest in providing a fair trial to Nancy Walsh, an argument that has been mooted by her guilty plea. *See supra* note 2.

188

300, 302, ¶¶ 9, 19, 955 P.2d at 537, 539. It falls to Arizona courts to determine case by case, as the question arises, whether an asserted privacy interest *does* overcome the presumption.

¶ 15 Most often, when privacy contests arise under the Public Records Act, they concern personal data or information. In *Scottsdale Unified School District,* for example, our supreme court upheld the denial of access to public school records containing teachers' birth dates. 191 Ariz. at 303, ¶¶ 22–25, 955 P.2d at 540.

¶ 16 The range of cognizable privacy concerns is considerably broader, however, than those involving data or information. In *State v. Baldwin,* for example, this court determined that the government has a significant interest in protecting "residential privacy" and " 'the quiet enjoyment of the home.' " 184 Ariz. 267, 272, 908 P.2d 483, 488 (App. 1995) (quoting *Frisby v. Schultz,* 487 U.S. 474, 486, 108 S.Ct. 2495, 101 L.Ed.2d 420 (1988)). More recently, we recognized that privacy rights implicate concerns " 'of the most fundamental sort' to the individual, concerns that implicate 'autonomy with respect to the most personal of life choices' and 'the intimate aspects of identity.' " *State v. Watson,* 198 Ariz. 48, 52, ¶ 8, 6 P.3d 752, 756 (App.2000) (quoting Laurence H. Tribe, *American Constitutional Law* § 15–1 (2d ed.1988)).

¶ 17 Precisely such concerns are placed at issue in this case. Indeed, we cannot imagine a more fundamental concern or one more directly associated with "the intimate aspects of identity" and family autonomy than the desire to withhold from public display the recorded suffering of one's child.

## CONCLUSION

¶ 18 When it is asserted that the presumptive public interest in the accessibility of a particular public record is outweighed by considerations of confidentiality, privacy, or the best interests of the State, it is relevant to inquire whether the information within the record is available through alternative means. This is so because the public interest in receiving access to a public record "de-

creases when 'alternative means' of receiving the information exist." *Scottsdale Unified Sch. Dist.,* 191 Ariz. at 303, ¶ 24, 955 P.2d at 540.

¶ 19 Here Mesa has established a substantial basis—the privacy interest of Dominic and his family—for withholding the audiotape of a 911 call regarding Dominic's injuries but has provided the informational content of that call by transcript. And although we understand that the transcript lacks the dramatic properties that would lend greater broadcast value to the tape, KTVK–TV does not claim, nor do we find, that the tape advances the purpose of the Public Records Act in any way that the transcript does not satisfy.

¶ 20 For the foregoing reasons, we reverse the trial court's order that Mesa turn over to the station the audiotape of Walsh's 911 emergency call.

CONCURRING: EDWARD C. VOSS, Judge.

TIMMER, Judge, dissenting.

¶ 21 The Majority holds today that while Dominic and his family do not have a privacy interest in the information expressed in the 911 tape, as evidenced by Mesa's production of the transcript, they possess such an interest in the emotion produced by the call that is sufficient to overcome the strong presumption favoring disclosure of the tape. Because I agree with the trial court that Mesa failed to overcome this presumption by specifically demonstrating how disclosure would detrimentally affect any privacy interests of Dominic and his family, I respectfully dissent.

¶ 22 Mesa sufficiently rebutted the presumption compelling production of the tape only if it specifically demonstrated how disclosure would detrimentally affect the privacy interests of Dominic and his family. *Cox Ariz. Publ'ns, Inc.,* 175 Ariz. at 15, 852 P.2d at 1198. The Majority reasons that Mesa overcame the presumption by introducing evidence from Dominic's mother that broadcast of the tape would interfere with her family's healing process, because a public airing of the tape would remind them of that painful day. *See supra* ¶ 12.

¶ 23 Like the trial court judge, I do not dispute or minimize the emotional impact that airing the tape would have on Dominic and his family. In light of the emergency nature of 911 calls, however, it is difficult to imagine a call that would not stand as a "painful reminder" to any listener who was the subject of a request for assistance or related to such a person. Yet, as Mesa concedes, 911 tapes are public records, which must be presumptively produced under the Public Records Act unless and until the legislature exempts them from disclosure. Under the Majority's view announced today, Mesa and other cities can shield every 911 tape from inspection if its release would be emotionally upsetting to someone involved in a call. But such a sweeping exemption would contravene the strong policy favoring open disclosure and access to public records. *Id.* Consequently, something more than a desire by a victim's family to avoid painful reminders of a tragic day must be demonstrated before the presumption is overcome. Such evidence is lacking in this case.

¶ 24 The majority of this nine minute tape contains Walsh's frantic requests for assistance and a 911 operator's efforts to calm her and collect information. Intermittently, Dominic is heard making faint cries and breathing sounds. The tape does not reveal any graphic details concerning the crime, and Mesa has not directed us to any private or confidential information on the tape that, if revealed, would subject Dominic or his family to retaliation, humiliation, public ridicule, or other substantial and irreparable harm if aired to the public. *See Carlson,* 141 Ariz. at 491, 687 P.2d at 1246 (recognizing that limits on disclosure are needed to prevent substantial and irreparable public or private harm in appropriate cases); *Bowling,* 37 S.W.3d at 788 (same); *cf. United States Dep't of State v. Wash. Post Co.,* 456 U.S. 595, 600, 102 S.Ct. 1957, 72 L.Ed.2d 358 (1982) (a purpose of the Freedom of Information Act is to prevent disclosure of files containing "intimate details" and "highly personal" information, which would constitute a "clearly unwarranted invasion" of privacy). Moreover, Dominic's mother did not testify that she wished to shield the content of the 911 tape from public scrutiny. Indeed, she agreed that Mesa appropriately released the transcript containing the information imparted by Walsh. Rather, she objected to release of the tape because she and her family wished to avoid hearing it played.

¶ 25 The desire by Dominic's family to avoid listening to the 911 tape is understandable. It is not, however, sufficient to overcome the strong presumption favoring production of the tape. Consequently, I would stop the analysis at this point without balancing the interests of public disclosure against that of Dominic and his family and considering whether the transcript adequately served the public's inspection needs. *See supra* ¶ 10.

¶ 26 The public may inspect and copy governmental records under our open records law " 'without limitation as to the reason or reasons for which the inspection is undertaken.' " *Bolm v. Custodian of Records of the Tucson Police Dep't,* 193 Ariz. 35, 39, ¶ 10, 969 P.2d 200, 204 (App.1998) (citation omitted). We should therefore resist the temptation to become "super editors" for the media and base a production decision on our view of how public information should be disseminated in our communities. Unless the legislature passes a law excepting all 911 tapes from production under the Public Records Act, governmental entities should not withhold production of such tapes solely because their broadcast would serve as painful reminders to victims and their families of distressing events. Because the tape in this case does not fall within a statutory or common law exception sufficient to overcome the strong presumption favoring public disclosure, I would affirm.