210 P.3d 1287

**Joseph M. ARPAIO, Petitioner,**

v.

**The Honorable Norman J. DAVIS, Judge of the Superior Court of the State of Arizona, in and for the County of Maricopa, Respondent Judge,**

**Barbara Mundell and Marcus Reinkensmeyer, Real Parties in Interest.**

**No. 1 CA–SA 09–0015.**

Court of Appeals of Arizona, Division 1, Department D.

June 2, 2009.

---

Sanders & Parks PC By James Arthur Eaves, Phoenix, Attorneys for Petitioner.

Terry Goddard, Arizona Attorney General By Paula S. Bickett, Assistant Attorney General, Rex C. Nowlan, Assistant Attorney General, Phoenix, Attorneys for Respondent/Real Parties in Interest.

OROZCO, Judge.

¶ 1 Maricopa County Sheriff Joseph M. Arpaio (the Sheriff) challenges the denial of judicial records requests he made to Maricopa County Court Administrator Marcus Reinkensmeyer (Reinkensmeyer). We conclude that Reinkensmeyer properly denied the request pursuant to Rule 123(f)(4)(A)(i) and (ii) of the Arizona Supreme Court.

¶ 2 The Sheriff requested thousands of random, unidentified electronic messages (e-

mails) and documents, without regard to subject matter, sent to or from certain individuals, within a range of dates. The request contained no other limiting criteria. A full response to such a request would have required an extraordinary expenditure of resources not only to identify the material falling under the request, but even more time to isolate and exclude e-mails and documents falling within the request that contained attorney and judicial work product. Such an untargeted review would seriously impede the court's performance of its core functions with no discernable public benefit. Rule 123 specifically addresses such requests, and we therefore deny the Sheriff's request for relief.

## FACTS AND PROCEDURAL HISTORY

¶ 3 This special action arises from judicial records requests submitted to Reinkensmeyer from Maricopa County Sheriff's Office Captain Paul Chagolla (Chagolla) on behalf of the Sheriff.

¶ 4 Chagolla initially sent two judicial records requests to Reinkensmeyer pursuant to the Arizona Public Records Law, Arizona Revised Statutes (A.R.S.) sections 39–121 (2001) through –121.03 (2001). The first request was a letter to Reinkensmeyer dated December 7, 2007 asking for all e-mails, memoranda, notes and letters sent to or from Maricopa County Superior Court Presiding Judge Barbara Rodriguez Mundell (Judge Mundell), the Adult Probation Administrator Barbara Broderick (Broderick), Maricopa County Superior Court employee and special court counsel Jessica Funkhouser (Funkhouser), and all e-mails to or from the administrative assistants assigned to the named individuals for the period of time from November 1, 2007, through December 7, 2007.

¶ 5 Ten days later, Chagolla sent another similar request to Reinkensmeyer, requesting he make available all e-mails received by or sent from Reinkensmeyer himself or on his behalf by his administrative assistant(s) for the period of time from November 1, 2007 through December 17, 2007. Chagolla requested that all records be provided by December 21, 2007.

¶ 6 On December 18, 2007, Funkhouser sent Chagolla an email confirming receipt of his request. She notified Chagolla that the court would begin processing his request, but would not be able to complete it by the December 21st deadline. She also notified him that a more specific request identifying the topic or topics of interest would facilitate a quicker response. Chagolla replied to Funkhouser's e-mail four hours later and asked again for all the records he had previously requested, a log identifying any withheld records and also asked that he be provided any records immediately available.

¶ 7 In a letter dated January 10, 2008, Reinkensmeyer notified Chagolla that the requests were incorrectly submitted pursuant to the Arizona Public Records Law. He stated that the request should have been submitted pursuant to Rule 123 and that Chagolla's previous requests did not comply with the Rule. Reinkensmeyer attached a copy of Rule 123 and asked that Chagolla comply with the Rule if he made any further requests.

¶ 8 Chagolla responded by submitting a request five days later, purportedly pursuant to Rule 123, requesting the same records as the previous requests and additionally requesting records generated by Presiding Criminal Judge Anna M. Baca (Judge Baca) and her administrative assistants. Chagolla requested a response by January 31, 2008, or a written explanation of why the request was being denied or could not be honored by that date.

¶ 9 In a letter dated January 31, 2008, Reinkensmeyer denied the last request. In explaining the denial, Reinkensmeyer cited the lack of specificity in the request and stated that compliance with the request would create an undue financial burden on court operations and substantially interfere with the operations of the court, justifying denial under Rule 123(f)(1) and 123(f)(4)(A). Reinkensmeyer further noted that the vast majority of requested documents were judicial work product or administrative records, which are not subject to public inspection pursuant to Rules 123(d)(3) and 123(e). Reinkensmeyer again offered to meet with

Chagolla to explore alternatives that would allow access to records.

¶ 10 More than two months later, on April 17, 2008, Chagolla sent a letter to Reinkensmeyer requesting *any* documentation that could be provided under his previous request, along with a log identifying any withheld records and the reason why they were withheld. Chagolla asked Reinkensmeyer to produce this information by May 1, 2008. Reinkensmeyer responded in a letter dated April 22, 2008 and again denied the requests based on Rule 123(f)(4)(A), saying it would require judges, administrators and staff to review over 16,000 e-mails. Reinkensmeyer again asked Chagolla to specify the topic or topics covered by his request and offered to meet to discuss the request.

¶ 11 Over seven months later, on December 5, 2008, in a telephone conversation, Maricopa County Sheriff's Office Chief Deputy David Hendershott (Hendershott) relayed to Reinkensmeyer that, due to the assignment of retired Judge Kenneth Fields (Judge Fields) to hear a case filed against County Supervisor Don Stapley (Supervisor Stapley) in an unrelated matter, Hendershott needed a response to the records request no later than December 8, 2008, or a lawsuit would be filed. In a letter dated December 11, 2008, the Maricopa County Deputy Court Administrator and General Counsel Karen Westover (Westover) again denied the request, saying it was inappropriate because it appeared to be not only in retaliation for the assignment of Judge Fields but also an improper *ex parte* contact with the court in an effort to remove Judge Fields from Supervisor Stapley's matter. Westover advised Hendershott that Reinkensmeyer remained willing to meet with him in an effort to focus the request for records.

¶ 12 On December 15, 2008, the Sheriff filed a formal Request for Administrative Review with the court pursuant to Rule 123(f)(5)(A). That review was conducted by Associate Presiding Judge Norman Davis (Judge Davis), whom Funkhouser provided with hard copies of certain e-mails and letters called for by the request. Judge Davis

was also provided CDs containing other requested e-mails and was given access to the offices of other named assistants in order to review original copies of requested letters, memoranda and notes too voluminous to copy.

¶ 13 After reviewing some of the records *in camera*, Judge Davis observed that the request for administrative review was untimely and could be rejected for that reason alone, but nonetheless conducted a review on the merit's and upheld the denial of the judicial records request. The Sheriff filed this petition for special action review pursuant to Supreme Court of Arizona Rule 123(f)(5)(B). We have jurisdiction pursuant to A.R.S. § 12–120.21.A.4 (2003) and Rule 123(f)(5)(B).

## DISCUSSION

¶ 14 The Sheriff argues Reinkensmeyer violated the substance of the Public Records Law in denying his judicial records request pursuant to Rule 123; Judge Davis' administrative review of the judicial records request was inconsistent with the principles of governmental checks and balances; and the request for administrative review was timely. We review each of these issues in turn.

### I. Rule 123 versus Arizona Public Records Law

¶ 15 We review *de novo* the issue of law whether a custodian's denial of access to public records was wrongful. *Scottsdale Unified Sch. Dist. No. 48 v. KPNX Broadcasting Co.*, 191 Ariz. 297, 302, ¶ 20, 955 P.2d 534, 539 (1998). We also defer to any findings of fact by the trial court. *W. Valley View, Inc. v. Maricopa County Sheriff's Office*, 216 Ariz. 225, 227, ¶ 7, 165 P.3d 203, 205 (App.2007).

¶ 16 The Sheriff initially argues that the trial court's reliance on Rule 123 directly conflicts with the clear and unambiguous language of A.R.S. § 39–121,[1] making it impossible to harmonize the rule with the statute. *See State v. Hansen*, 215 Ariz. 287,

---

1. "Public records and other matters in the custody of any officer shall be open to inspection by any person at all times during office hours." A.R.S. § 39–121.

289, ¶ 7, 160 P.3d 166, 168 (2007) (holding whenever possible, rules and statutes' should be harmonized and read in conjunction with each other). The Sheriff further argues that the court's use of Rule 123 in this fashion conflicts with the substantive presumption under the Arizona Public Records Law that the requested records are "public records" and thus subject to prompt disclosure upon request.[2]

¶ 17 Arizona's constitution provides that "[t]he Supreme Court shall have administrative supervision over all the courts of the State." Ariz. Const., art. 6, § 3. This administrative power "is a function of its responsibility to administer an integrated judiciary." *Scheehle v. Justices of the Ariz. Supreme Court*, 211 Ariz. 282, 289, ¶ 27, 120 P.3d 1092, 1100 (2005). The Supreme Court fulfills its administrative responsibilities by promulgating rules. *Id.* at ¶ 23, 120 P.3d at 1099. "Such rules are valid even if they are not completely cohesive with related legislation, so long as they are an appropriate exercise of the court's constitutional authority." *Id.* at ¶ 24, 120 P.3d at 1099. Accordingly, Rule 123—not the Arizona Public Records Law—controls requests for judicial records.

¶ 18 In *London v. Broderick*, the Arizona Supreme Court implicitly recognized that requests for judicial records are governed by Rule 123 and reaffirmed the constitutionality of Rule 123 as recognized in Rule 123(a).[3] 206 Ariz. 490, 80 P.3d 769 (2003). The Supreme Court held that the application of Rule 123 to the courts achieves the same purpose as the Public Records Law does for other government offices by implementing "the public's interest in seeing that the courts perform efficiently and effectively by providing access to court records." *Id.* at 493, ¶ 8, 80 P.3d at 772. *Compare* A.R.S. § 39–121 ("Public records and other matters in the custody of any officer shall be open to inspection by any person at all times during office hours.") *with* Rule 123(c)(1) ("[T]he records in all courts and administrative offices of the Judicial Department of the State of Arizona are presumed to be open to any member of the public").

¶ 19 Consistent with application of the public records statutes, the court held that at times, "the benefits of public disclosure must yield to the burdens imposed on the government" by such disclosure requests. *London*, 206 Ariz. at 493, ¶ 9, 80 P.3d at 772. "Such circumstances have spawned common-law limitations on public disclosure to protect privacy interests, confidential information, and certain governmental interests." *Id.* These limitations on public disclosure allow for withholding of documents if there are "sufficiently weighty reasons to tip the balance away from the presumption of disclosure and toward non-disclosure." *Id.*

¶ 20 Rule 123(c)(1) mirrors the limitations placed on public records requests under the public record statutes by providing "in view of the possible countervailing interests of confidentiality, privacy or the best interests of the state[,] public access to some court records may be restricted...." Ariz. R. Sup.Ct. 123(c)(1). Under that rationale the rules restrict access to administrative records[4] and bar requests that would impose an undue financial burden, are duplicative or harassing or substantially interfere with court operations. Ariz. R. Sup.Ct. 123(f)(4)(A)(i)-(iv). This is consistent with, though not congruent to, access restrictions

---

2. However, not all records are public records. The Arizona Supreme Court has held that "the mere fact that a writing is in the possession of a public officer or public agency does not make it a public record." *Salt River Pima–Maricopa Indian Cmty. v. Rogers*, 168 Ariz. 531, 538, 815 P.2d 900, 907 (1991). "Only those documents having a 'substantial nexus' with the government agency's activities qualify as public records." *Griffis v. Pinal County*, 215 Ariz. 1, 4, ¶ 10, 156 P.3d 418, 421 (2007) (citing *Salt River*, 168 Ariz. at 541, 815 P.2d at 910).

3. Rule 123(a) provides: "Pursuant to the administrative powers vested in the Supreme Court by Article VI, Section 3, of the Arizona Constitution, and the court's inherent power to administer and supervise court operations, this rule [is] adopted to govern public access to the records of all courts and administrative offices of the judicial department of the State of Arizona."

4. Rule 123(e) restricts access to certain administrative records including employee records, judicial case assignments, and attorney and judicial work product. Ariz. R. Sup.Ct. 123(e)(1)(11).

imposed under the Public Records Law.[5] In *Scottsdale Unified School District*, the Arizona Supreme Court held:

> This public right of inspection may also be curtailed in the interest of "confidentiality, privacy, or the best interests of the state." If these interests outweigh the public's right of inspection, the State can properly refuse inspection. The State has the burden of overcoming "the legal presumption favoring disclosure."

191 Ariz. at 300, 955 P.2d at 537. (internal citations omitted). *See also Carlson v. Pima County*, 141 Ariz. 487, 491, 687 P.2d 1242, 1246 (1984) (holding all public records required to be maintained and available for copying and inspection are nonetheless "subject to the official's discretion to deny or restrict access where ... the best interests· of the state ... outweigh the general policy of public access").

■ ¶ 21 Here, after an *in camera* review of some of the requested documents, Judge Davis found Reinkensmeyer's denial of the Sheriff's request was proper under Rule 123(f)(4)(A)(i) and (ii).[6] Judge Davis found that

> Not only does the request include thousands of random and uncategorized electronic messages, but would likely include many paper documents filed by topic within volumes of filed documents....
>
> In order to consider releasing any of the requested documents, an extensive review would need to be undertaken just to identify material falling within the request. An excessive amount of additional time would then be required to isolate and exclude attorney and judicial work product, case records closed pursuant to Rule 123(d), and administrative records closed pursuant to Rule 123(e). This review would require

an unreasonable expenditure of resources and time by the named individuals and staff.... The use of extensive judicial and staff time and resources to comply with the requests would substantially and further interfere with the constitutionally and statutorily mandated functions of the court and the office of the Custodian....

> If such all-inclusive, blanket requests for information were allowed, the Court's operations and mandates would be seriously curtailed.

¶ 22 We find Judge Davis did not abuse his discretion in finding that the review "would require an unreasonable expenditure of resources and time ... under normal circumstances." Judge Davis also properly applied the considerations in Rule 123 when he essentially found that the interests of the court outweighed the public's right to inspection and therefore the custodian's denial of access to judicial records was proper.

## II. Propriety of Judge Davis conducting Administrative Review

■ ¶ 23 The Sheriff next argues that Judge Davis' administrative review of the Rule 123 request is inconsistent with the principles of governmental checks and balances because Judge Mundell was the subject of the request and she appointed Judge Davis to perform the administrative review pursuant to Rule 123(f)(5)(A). The Sheriff argues that Judge Davis is essentially a subordinate employee of Judge Mundell, and as such, is unlikely to compel Judge Mundell, as his superior, to disclose the requested records after Judge Mundell previously denied the request herself.

¶ 24 Citing *Clark v. Campbell*, 219 Ariz. 66, 71, ¶ 17, 193 P.3d 320, 325 (2008), the Sheriff argues a presiding judge manages the con-

---

5. One of the defining characteristics of the judicial branch is its openness to public scrutiny. In most cases, court proceedings and case records are open to the public on an immediate basis without the need for a special request. The nature of the courts' work, however, implies that their internal communications are likely to involve legal analysis or judicial work product. These areas have long been recognized as exempt from disclosure, and Rule 123 properly recognizes that the handling of a request for judicial records involves considerations unique to the branch.

6. The custodian is required to comply with any request for records, except requests that are determined:

   (i) to create an undue financial burden on court operations because of the amount of equipment, materials, staff time and other resources required to satisfy the request;
   (ii) to substantially interfere with the constitutionally or statutorily mandated functions of the court or the office of the custodian....

   Rule 123(f)(4)(A).

duct of court personnel and takes supervisory actions against judges who fail to properly perform their duties. Therefore, the Sheriff argues that Judge Davis is a subordinate employee who would be improperly influenced by his direct supervisor. However, the Sheriff's reliance on *Clark* is misplaced. In *Clark,* this court held that pursuant to both statutory and constitutional authorities, a presiding judge had supervisory authority over an elected constable who was not performing the statutory duties required of her in her capacity as an officer of the court, and that the presiding judge had authority "to take appropriate and reasonable disciplinary action *if* she was not." 219 Ariz. at 73, ¶ 26, 193 P.3d at 327 (emphasis added). This court also pointed out that this administrative function was to be distinguished from such functions or acts that are judicial. *Id.* at 71, ¶ 20, 193 P.3d at 325 (citing *In re Shannon,* 179 Ariz. 52, 76, 876 P.2d 548, 572 (1994)). Nothing in *Clark* suggests that a presiding judge's supervisory authority over officers of the court would allow a presiding judge to influence or control the judicial decisions of another judge.

¶ 25 Consistent with this point, we also have found that although a presiding judge does have administrative supervisory authority over the other judges in the superior court, there is "no increase in the judicial power [or] authority of such judge so as to give [her] the authority to overrule judicial decisions made by other judges...." *State v. Superior Court,* 4 Ariz.App. 562, 565, 422 P.2d 393, 396 (1967). Judge Davis' decision in the administrative review was not subject to approval by Judge Mundell, and Judge Davis therefore was not improperly biased or prejudiced because of Judge Mundell's administrative supervisory role.[7]

### III. Timeliness of the Request

¶ 26 Finally, the Sheriff argues that Judge Davis erred in ruling that his request for an administrative review was untimely. In the decision, Judge Davis stated the "[a]dministrative Review is untimely and could be rejected for this reason alone," but elected to address the merits in order to promote judicial economy and resolve the issues presented.

¶ 27 Both parties agree Rule 123(f)(5)(A) provides that a request for review must be filed within ten days of a denial. The Sheriff contends that his formal Request for Administrative Review, which was filed on December 15, 2008, was timely because the "final denial" did not occur until December 11, 2008 when Westover's letter denying the request was sent to Hendershott.

¶ 28 However, the Sheriff received two previous official denials from which he should have submitted a timely request for administrative review. One was a letter dated April 22, 2008, sent from Reinkensmeyer to Chagolla, which denied the requests based on Rule 123(f)(4)(A). Per that provision, a request for administrative review should have been filed within the next ten days, by May 1, 2008.

¶ 29 Further, the April 22, 2008 denial was essentially a denial of the same request made earlier by the Sheriff and denied earlier in a letter sent from Reinkensmeyer to Chagolla on January 31, 2008. That letter specifically denied the Rule 123 request and gave detailed reasoning for the denial.

¶ 30 Although the Sheriff claims that discussions continued until December 11, 2008, when he received Westover's final denial, that does not change the fact that the initial denial occurred at the earliest on January 31, 2008 and at the latest on April 22, 2008. Therefore, the Sheriff's request for administrative review dated December 15, 2008 was untimely as a matter of law.

### CONCLUSION

¶ 31 For the above mentioned reasons, we deny the relief sought by the Sheriff.

CONCURRING: PETER B. SWANN, and PATRICIA K. NORRIS, Judges.

---

**7.** Furthermore, Judge Davis, like every other judge of the Maricopa County Superior Court, serves as an independent elected official, subject to a retention election every four years, not at the pleasure or approval of the presiding judge. *See* Ariz. Const. art. 6, §§ 12, 37, 38, 40; *Matter of Marquardt,* 161 Ariz. 206, 207 n. 1, 778 P.2d 241, 242 n. 1 (1989).