267 P.3d 1185

**JUDICIAL WATCH, INC.,**
**Plaintiff/Appellant/Cross–**
**Appellee,**

v.

**CITY OF PHOENIX,**
**Defendant/Appellee/Cross–Appellant.**

**No. 1 CA–CV 11–0006.**

Court of Appeals of Arizona,
Division 1, Department A.

Dec. 22, 2011.

Kercsmar & Feltus PLLC By Todd Feltus, Gregory B. Collins, Scottsdale, Attorneys for Plaintiff/Appellant Judicial Watch.

Gary Verberg, City Attorney By Sandra E. Hunter, Assistant City Attorney, Phoenix, Attorney for Defendant/Appellee City of Phoenix.

## OPINION

TIMMER, Presiding Judge.

¶ 1 Judicial Watch, Inc. appeals the superior court's denial of special action relief after the City of Phoenix refused to produce activity logs created by the Phoenix Police Department detail assigned to protect Phil Gordon, Mayor of Phoenix. The City cross-appeals the court's ruling that the Mayor's privacy interest in the worksheets did not overcome the presumption favoring inspection. For the reasons that follow, we affirm the judgment to the extent it decides that on this record, the City failed to demonstrate that the Mayor's privacy interest outweighs the public's interest in inspecting the worksheets. We reverse the judgment, however, insofar as it concludes that the City is not required to redact security-related and confidential information and then produce the worksheets for inspection. We remand with instructions to enter a judgment requiring such redaction

and inspection within a reasonable timeframe.

## BACKGROUND

¶ 2 The Phoenix Police Department assigns a four-officer security detail to protect Phoenix Mayor Phil Gordon. Members of the detail guard him at least six days a week, from the time he leaves his home in the morning until he returns in the evening.

¶ 3 From January 2007 to October 2009, the detail kept two types of records to document its activities for review by superiors in the police department. First, the detail made annotations on copies of the Mayor's daily public calendar, which was created by his staff (the "Annotated Calendar"). The annotations were intermittent and included information such as the identities of officers present at an event, the number of people in attendance, and if any suspicious incidents occurred. Second, the detail kept handwritten logs entitled, "Unscheduled Worksheets" (the "Worksheets"), which listed the times, locations, and badge numbers of the officers involved in the Mayor's unscheduled events during a day.[1] Unscheduled events reflected the Mayor's personal business in significant part, including things like shopping, having lunch, and doing personal errands. Officers occasionally identified whom the Mayor was meeting with during unscheduled events. Officers affixed the Worksheets to the back of the Annotated Calendar and provided both to superiors to account for the detail's expenditures of time protecting the Mayor. Around October 2009, the detail stopped creating the Annotated Calendar and Worksheets; instead, the officers began keeping a simple tally of the number of outings with the Mayor.

¶ 4 In December 2009, Judicial Watch made a public records request to the Phoenix Police Department requesting "[a]ll activity logs" for the Mayor's security detail from December 30, 2007 to December 11, 2009. The City made the Annotated Calendar available but refused to produce the Worksheets for inspection. The City justified withholding the Worksheets because (1) the informa-

---

**1.** The Worksheets occasionally duplicated entries in the Annotated Calendar.

tion could be used to undermine the Mayor's safety, (2) the information was private and confidential, and (3) the information was protected by the deliberative process privilege.

¶ 5 In May 2010, Judicial Watch filed a special action complaint asking the superior court to compel the City to produce the Worksheets for inspection. After holding an evidentiary hearing, the court conducted an in camera review of the Worksheets from part of January and all February 2008 as a representative sample of the requested Worksheets.

¶ 6 The court issued a comprehensive written ruling finding that the Worksheets are public records under Arizona Revised Statutes ("A.R.S.") section 39–121 (2001). The court also found that the Mayor had a privacy interest in the Worksheets, but ruled that his interest did not justify the City's refusal to permit inspection. The court additionally ruled, however, that the public's interest in inspecting the Worksheets was outweighed by considerations of security and confidentiality. Specifically, the court found that release of the Worksheets would hamper the security detail's ability to protect the Mayor and his family because entries revealed patterns of activities that could be used to predict the Mayor's whereabouts. For example, the court pointed out that the Worksheets revealed the precise time of day when the Mayor commonly left his home for work and then returned in the evening. The court also found that the Worksheets contain confidential information both because they reflect business meetings that were conducted privately as a matter of necessity,[2] and they document information gleaned from conversations, meetings, and events that the Mayor would expect to be kept confidential as a condition for permitting the officers to guard him closely.

¶ 7 The court next considered whether the remaining information in the Worksheets could be produced for inspection after redacting the security-related and confidential information. The court rejected that notion, concluding that "[o]nce the entries affecting the Mayor's security and confidentiality are redacted, what remains is essentially the Mayor's public calendar, which has been produced." As a result, the court found that redaction is not "feasible or necessary."

¶ 8 This timely appeal and cross-appeal followed. We review de novo whether the denial of access to public records is wrongful, *London v. Broderick,* 206 Ariz. 490, 493 n. 3, ¶¶ 10–11, 80 P.3d 769, 772 n. 3 (2003), but we defer to the superior court's factual findings unless they are clearly erroneous. *Ariz. Bd. of Regents v. Phoenix Newspapers, Inc.,* 167 Ariz. 254, 257, 806 P.2d 348, 351 (1991).

## DISCUSSION

### I. Appeal

¶ 9 Under Arizona's Public Records Act, public records are open for inspection by any person upon request. A.R.S. § 39–121. The purpose of the Act is "to allow citizens 'to be informed about what their government is up to.'" *Scottsdale Unified Sch. Dist. v. KPNX Broad. Co.,* 191 Ariz. 297, 302–03, ¶ 21, 955 P.2d 534, 539–40 (1998) (citation omitted). The right to inspect must have limits, however, to avoid the infliction of substantial and irreparable private or public harm. *Carlson v. Pima Cnty.,* 141 Ariz. 487, 491, 687 P.2d 1242, 1246 (1984).

¶ 10 A court decides whether a document is subject to inspection by making a two-step assessment. The court must initially determine whether the requested document is a "public record." *Griffis v. Pinal Cnty.,* 215 Ariz. 1, 5, ¶ 13, 156 P.3d 418, 422 (2007). Assuming the court finds that the document constitutes a public record, a strong presumption favoring disclosure applies and, "when necessary, the court can perform a balancing test to determine whether privacy, confidentiality, or the best interests of the state outweigh the policy in favor of disclosure." *Id.* at ¶ 13. The government has the burden of overcoming the presumption of disclosure. *Scottsdale Unified Sch. Dist.,* 191 Ariz. at 300, ¶ 9, 955 P.2d at 537.

---

**2.** For example, a member of the security detail testified that a mayor might conduct discussions with a large corporation interested in moving its headquarters to Phoenix; the corporation may require those talks to be kept confidential.

¶ 11 The superior court's finding that the Worksheets are public records is unchallenged on appeal. And Judicial Watch does not dispute that the City has security and confidentiality concerns that outweigh the public's interest in inspecting portions of the Worksheets. Judicial Watch argues, however, the court erred by ruling that production of appropriately redacted Worksheets is neither necessary nor feasible. We address each argument in turn.

*Necessity of producing redacted Worksheets*

¶ 12 The City's security-related and confidentiality interests do not preclude inspection of the Worksheets entirely if the information affecting these interests can be redacted. *Carlson,* 141 Ariz. at 490–91, 687 P.2d at 1245–46 (stating redaction is particularly warranted when the government's interests are ones of confidentiality or privacy); *see also KPNX–TV v. Superior Court,* 183 Ariz. 589, 594, 905 P.2d 598, 603 (App.1995) ("Good reason to deny access to part of a record is not necessarily good reason to deny access to all of it."). The superior court found that producing a redacted version of the Worksheets was not necessary because the remaining information would consist essentially of the Annotated Calendar, which the City already produced. *See A.H. Belo Corp. v. Mesa Police Dep't,* 202 Ariz. 184, 188, ¶ 18, 42 P.3d 615, 619 (App.2002) (holding when considering whether competing interests outweigh presumption favoring inspection, it is relevant whether an alternative means to inspect the information is available).

¶ 13 Judicial Watch argues the superior court's ruling is flawed because the redacted Worksheets would not duplicate the Annotated Calendar, and the City has failed to specifically demonstrate how production of information not security-related or confidential would be against the government's best interest. The City counters that the vast majority of the information in the Worksheets is security-related or confidential, and that redaction of that information would leave only the information in the Annotated Calendar and possibly information about a small number of unprotected events.

¶ 14 A comparison of the Annotated Calendar and the one-month sample of Worksheets provided for in camera inspection reveals that redaction of security-related and confidential information from the Worksheets would result in a document containing information that is different than any reflected in the Annotated Calendar. First, as previously mentioned, the purpose of the Worksheets was to account for the security detail's time and activities *outside* the Mayor's publicly announced events. Thus, the Worksheets were not designed to duplicate the Annotated Calendar, and they do not. For example, the February 1, 2008 entry on the Annotated Calendar states the Mayor attended Super Bowl-related functions at the Phoenix Convention Center, Alice Cooperstown restaurant, Valley Christian Center, and other locations. The corresponding Worksheet for that date does not reflect any of these events by name, location, or time. Rather, the Worksheet entries list times and locations for other stops between scheduled events. Coupled with the corresponding day in the Annotated Calendar, the Worksheet gives the reader a complete picture of the detail's activities with the Mayor on February 1, 2008. The remaining portion of the February 2008 Worksheets similarly provides unscheduled details of the Mayor's days, although some repetition with the Annotated Calendar appears occasionally. And as the City acknowledged in oral argument before this court, Worksheets exist for days on which no entries exist in the Annotated Calendar because the Mayor had no public events those days.

¶ 15 Second, as the City acknowledges, not all information in the Worksheets is security-related or confidential. The February 1, 2008 Worksheet entries variously list specific addresses or intersections, reflect restaurant names, and recount timing and officer-staffing information, all of which potentially may be properly redacted to avoid a security threat. But we cannot conceive how additional generic notations like the Mayor "greet[ed] officers" or he went to "cleaners" impact a security-related or confidentiality concern. Similarly, a notation later in February describes an apparently one-time personal errand that, on its face, does not pre-

dict the Mayor's movements and would not pose a security threat if revealed without additional descriptive information.[3] Because acts of greeting officers, visiting the cleaners, and performing non-predictive, one-time errands are not set forth on the corresponding Annotated Calendar entry, this "unredacted" information is not duplicative. The City contends such information constitutes a small part of the Worksheets. But the quantity of information subject to inspection, while impacting the *feasibility* of inspection, is irrelevant to resolving whether inspection is *necessary* in light of other produced documents. Because the Worksheets contain information subject to inspection, and that information is not duplicated in the Annotated Calendar, *see A.H. Belo,* 202 Ariz. at 188, ¶ 18, 42 P.3d at 619, the superior court erred by ruling that production of redacted Worksheets was unnecessary.

### Feasibility of producing redacted Worksheets

█ ¶ 16 The superior court also ruled that production of redacted Worksheets is not "feasible" based on the purportedly duplicative nature of the Annotated Calendar and redacted Worksheets. For the reasons explained, *see supra* ¶¶ 12–15, the court erred in this finding. Nevertheless, the City argues the court's ruling is supported by evidence that redacting the Worksheets would be unduly burdensome for the City, and this consideration outweighs the public's interest in inspecting the records. *See State v. Canez,* 202 Ariz. 133, 151, ¶ 51, 42 P.3d 564, 582 (2002) (recognizing that appellate court can affirm superior court if correct for any reason).

¶ 17 The City is correct in asserting that the burden of producing public records can outweigh the public's interest in inspecting those records. As our supreme court has noted, "sometimes the benefits of public disclosure must yield to the burden imposed on

... the government itself by disclosure." *London,* 206 Ariz. at 493, ¶ 9, 80 P.3d at 772; *see also Arpaio v. Davis,* 221 Ariz. 116, 121, ¶¶ 21–22, 210 P.3d 1287, 1292 (App.2009) (applying Arizona Supreme Court Rule 123(f)(4)(A)(i) and (ii) to hold no abuse of discretion by refusing to produce thousands of random, unidentified judicial records as compliance would require an unreasonable expenditure of resources and time). As the party opposing inspection, however, the City bears the burden of specifically demonstrating that redaction would be so unduly burdensome for the City that inspection is not warranted. *KPNX–TV,* 183 Ariz. at 592, 905 P.2d at 601.

¶ 18 The City has not met its burden to demonstrate that redaction of security-related and confidential information from the Worksheets would be so onerous that the City's interest outweighs the public's interest in inspection. The Worksheets are readily identifiable, easily culled from the department's records, and number approximately 600 pages. Thus, the Worksheets do not approximate the size and breadth of documents precluded from inspection in other cases cited by the City. *See Arpaio,* 221 Ariz. at 117–18, ¶ 2, 210 P.3d at 1288–89 (relating Sheriff "requested thousands of random, unidentified electronic messages (e-mails) and documents, without regard to subject matter, sent to or from certain individuals, within a range of dates"); *Times Mirror Co. v. Superior Court,* 53 Cal.3d 1325, 283 Cal.Rptr. 893, 813 P.2d 240, 252–53 (1991) (holding wholesale production of almost five years of governor's calendars and schedules not supported by identifiable public interest).

¶ 19 The City does not cite any evidence showing it could not readily discern what information in the Worksheets poses a security threat for the Mayor or his family if released for inspection. Indeed, in light of officers' testimony concerning the dangers posed by imparting information about the

---

3. The parties disagree whether a security threat would arise if the public could inspect information concerning one-time events that do not reveal the Mayor's patterns of activities. The superior court did not make a specific finding to resolve this issue but noted that information revealing the Mayor's favorite coffee shops, stores,

and the like and information revealing patterns of movement could pose a security risk if revealed. We need not resolve this dispute as the issue before us is whether the superior court erred by not compelling production of redacted Worksheets—not whether the court appropriately ruled regarding the scope of such redaction.

Mayor's patterns of movement, his favorite places to frequent, and the number, identities, and strategies of his detail at any particular event, it appears that one or more officers could easily redact security-related information.

¶ 20 Similarly, the City does not describe any evidence demonstrating it could not identify entries relating to preservation of the Mayor's confidences, which the City describes as part of the detail's duties. Presumably, any recordation of confidential conversations and the like can be readily spotted and redacted.

¶ 21 The City points out that officers testified it would be "difficult[ ]" or "near[ly] impossible" for officers to determine whether any entry concerned confidential City business, and therefore that information could not be identified and redacted. While we accept the accuracy of this testimony, the City does not cite any evidence indicating that someone from the Mayor's staff could not make this determination. Indeed, the record does not reveal whether the City asked the Mayor's office about the feasibility of making this identification. Alternatively, if specific entries bear indicia of confidentiality but a good faith effort to confirm that confidentiality proves fruitless, the City can redact that information; it is in the public's best interest to permit inspection of the Worksheets with such redactions rather than preclude any inspection because the City cannot confirm an entry's confidential nature with certainty.

■ ¶ 22 Finally, the City contends it would have been too difficult to make the required redactions within the ten-day timeframe demanded by Judicial Watch at the time of its request. The City's inability to meet this timetable, however, is insufficient, standing alone, to excuse compliance with the request. The promptness of a production of public records for inspection varies with the circumstances as necessary. *Congress Elementary Sch. Dist. No. 17 of Yavapai Cnty. v. Warren*, 227 Ariz. 16, 20, ¶ 16, 251 P.3d 395, 399 (App.2011) (citation omitted). Consequently, the City can expend time reasonably necessary to make redactions.

¶ 23 For these reasons, we decide the court erred by permitting the City to withhold the Worksheets from inspection because they contain security-related and confidential information. The City may redact such information from the Worksheets, but it must produce the remainder for inspection.

## II. Cross Appeal

■ ¶ 24 The superior court found that the Mayor has a privacy interest in information reflected in the Worksheets that relate to his purely personal pursuits. The personal nature of some activities is evident from the entries, such as the one noting a trip to the cleaners. Other entries reflect addresses, restaurant names, and the like, which the Mayor purportedly visited for personal reasons. The court found, however, that the Mayor's privacy interests do not outweigh the public interest in inspecting records that document activities of police officers paid with public funds to protect the Mayor while he engages in personal as well as business pursuits. *Id.*

¶ 25 The City argues the court erred by failing to preclude inspection of all information in the Worksheets that impacts the Mayor's privacy interests. Specifically, it asserts the Mayor's privacy interests in Worksheet references to his personal pursuits is substantial because (1) the Mayor did not forfeit his privacy rights upon assuming office, (2) the personal information sought has no connection to the Mayor's performance of his duties, (3) the Worksheets were not created to record the Mayor's activities, and (4) elected officials' purely personal information must be shielded from inspection in order to avoid discouraging qualified people from taking office. The City contends the public's competing interest in inspecting information concerning the Mayor's private activities is insubstantial because (1) personal information about the Mayor is available in other public records, including the Annotated Calendar and in the Mayor's own Twitter posts, and (2) the public's only identifiable interest in inspecting the information is to understand how publicly paid officers expend their time on the Mayor's detail. According to the City, the court erred in balancing these in-

terests and by failing to conclude the Mayor's interests outweigh the public's interest. *See Griffis,* 215 Ariz. at 5, ¶ 13, 156 P.3d at 422.

¶ 26 The City is obligated to assert an interest that justifies withholding inspection of a public record before the requesting party is required to demonstrate the purpose served by inspection or the court is obligated to conduct a balancing of interests. *A.H. Belo,* 202 Ariz. at 187, ¶ 10, 42 P.3d at 618. While the City contends it has met this threshold, Judicial Watch disagrees, arguing the City failed to specifically describe how release of information in which the Mayor has privacy interests would be detrimental to those interests.

¶ 27 We are guided in our resolution of this dispute by our supreme court's decision in *Cox Ariz. Publ'ns, Inc. v. Collins,* 175 Ariz. 11, 852 P.2d 1194 (1993). That case involved a public records request by newspapers to the Phoenix Police Department to inspect reports of an investigation leading to indictments of members of the Phoenix Suns basketball team. *Id.* at 12, 852 P.2d at 1196. Before the police could respond, a county attorney subpoenaed the reports, and the police then declined the records request on the ground it no longer possessed the reports. *Id.* at 12–13, 852 P.2d at 1196. In the ensuing special action, the police chief and county attorney advanced "generalized claims of broad state interest"[4] but failed to identify specific information in the reports to justify withholding them from inspection. *Id.* at 13, 852 P.2d at 1197. The superior court ordered the release of the reports and awarded fees to the newspapers pursuant to A.R.S. § 39–121.02(B) for wrongful withholding of public records for inspection. *Id.*

¶ 28 In the subsequent appeal, this court reversed the court's attorney fee award, reasoning the public is not entitled to inspect police reports in an ongoing criminal prosecution "because the countervailing interests of due process, confidentiality, privacy and the best interests of the state make disclosure inappropriate." *Id.* at 14, 852 P.2d at 1198 (citation omitted). The supreme court vacated this court's decision, stating in relevant part:

> We cannot support such a sweeping exemption from the public records laws of this state. Although the balancing scheme described in [*Mathews v. Pyle,* 75 Ariz. 76, 80–81, 251 P.2d 893, 896 (1952)], might, in a particular and exceptional case, lead to a conclusion similar to that reached by the court of appeals, the blanket rule advanced by that court contravenes the strong policy favoring open disclosure and access, as articulated in Arizona statutes and case law. The legislature has not carved out such a broad exemption, nor do we.
>
> The burden fell squarely upon Collins [the county attorney], as a public official, to overcome the legal presumption favoring disclosure. [citation omitted.] In his correspondence to the media and his arguments to the trial court, Collins argued in global generalities of the possible harm that might result from the release of police records. However, because reports of ongoing police investigations are not generally exempt from our public records law, it was incumbent upon Collins to specifically demonstrate how production of the documents would violate rights of privacy or confidentiality, or would be 'detrimental to the best interests of the state.' He did not attempt to make such a showing.

*Id.*

¶ 29 Like the respondents in *Cox Ariz. Publ'ns,* the City did not specifically demonstrate how disclosure of any particular type of information would detrimentally affect the Mayor's privacy interests. Noticeably missing from the record before us is any assertion by the Mayor or anyone on his behalf that release of any particular information in the Worksheets would adversely impact the

---

**4.** These "generalized claims" are analogous to ones urged by the City in this case. For example, the police chief and county attorney "urged that releasing the documents would jeopardize fair trials for the defendants, hamper ongoing investigations and prosecutions, burden prosecutors to an unreasonable extent, inhibit future witnesses from speaking with police, violate grand jury secrecy laws, and impair the privacy and confidentiality interests of persons mentioned in the reports." *Cox Ariz. Publ'ns,* 175 Ariz. at 13, 852 P.2d at 1197.

Mayor's privacy.[5] Because the City asserted only "global generalities" of possible harm resulting from an inspection of information in the Worksheets, it failed in its burden to articulate a sufficiently countervailing interest to defeat inspection. *But cf. A.H. Belo,* 202 Ariz. at 187, ¶ 12, 42 P.3d at 618 (crediting evidence from mother of deceased child that release of 911 tape concerning fatal injury to child would interfere with family's healing and thus adversely impact their privacy interest). Judicial Watch, therefore, was not obligated to justify its request, and the superior court was not required to balance the parties' interests. *Id.* at ¶ 10.

¶ 30 As the superior court correctly noted, public officials like the Mayor do not sacrifice all privacy rights in order to take and maintain office. But if a government entity declines an inspection request and judicial review is sought, that entity is not excused from specifically demonstrating how release of particular information would adversely affect an official's privacy interest. Because the City did not make such a demonstration in the record before us, we hold the superior court correctly ruled that the Mayor's privacy interests in the Worksheets do not overcome the presumption favoring inspection.

### III. Relief on remand

¶ 31 We reverse the superior court's judgment to the extent it relieves the City from producing redacted versions of the Worksheets for inspection. We remand for entry of judgment requiring the City to redact security-related and confidential information and produce the remainder of the Worksheets for inspection within a reasonable

timeframe. Judicial Watch requests we instruct the superior court to require the City to provide a separate index documenting the reason for each redaction. But the law does not require a government entity to expend the time and resources to create such an index—a new public document—in order to satisfy a public records request.[6] Rather, any further disputes regarding the scope of redaction can be addressed via an in camera inspection by the superior court.

### CONCLUSION

¶ 32 For the foregoing reasons, we reverse the superior court's judgment insofar as it relieves the City from producing redacted Worksheets for inspection. We affirm the court's judgment to the extent it concludes the City failed to demonstrate on this record that the Mayor's privacy interests in the Worksheets overcome the strong presumption in favor of public inspection of public records. We remand for additional proceedings in accordance with this decision.

CONCURRING: PATRICK IRVINE, and DANIEL A. BARKER, Judges.

---

5. Such evidence would have been especially pertinent in this case as the Mayor regularly released personal information in his public calendar. For example, entries in the Annotated Calendar regularly reflect the times scheduled for the Mayor to drop his child at the school bus stop, go jogging, and keep dentist appointments. The Mayor's dentist is identified by name and his location given. In light of the personal information set forth in the produced Annotated Calendar, it was particularly necessary that the City specifically demonstrate how release of similar information in the Worksheets would violate the Mayor's privacy interest to such an extent that it overcomes the presumption favoring inspection.

6. Judicial Watch argues that A.R.S. § 39–121.01(D)(2) (Supp.2010) requires an index justifying redaction. That provision requires most "agenc[ies]" to "furnish an index of records or categories of records that have been withheld and the reasons the records or categories of records have been withheld." *Id.* The City is not an "agency," and therefore § 39–121.01(D)(2) does not apply. *See* A.R.S. § 41–1001 (Supp. 2010) (defining "agency"). Regardless, § 39–121.01(D)(2) does not require a detailed index justifying redactions *within* a record; it only requires an index of records or categories of records withheld.