IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

KAREN FANN, in her official capacity as President of the Arizona Senate;
WARREN PETERSEN, in his official capacity as Chairman of the Senate
Judiciary Committee; the ARIZONA SENATE, a house of the Arizona
Legislature, *Petitioners*,

*v.*

THE HONORABLE MICHAEL KEMP, Judge of the SUPERIOR COURT
OF THE STATE OF ARIZONA, in and for the County of MARICOPA,
*Respondent Judge*,

AMERICAN OVERSIGHT, *Real Party in Interest*.

No. 1 CA-SA 21-0216
FILED 1-21-2022

Petition for Special Action from the Superior Court in Maricopa County
No. CV 2021-008265
The Honorable Michael Kemp, Judge

**JURISDICTION ACCEPTED;
RELIEF DENIED IN PART, GRANTED IN PART**

COUNSEL

Statecraft PLLC, Phoenix
By Kory A. Langhofer, Thomas J. Basile
*Counsel for Petitioners*

Coppersmith Brockelman PLC, Phoenix
By L. Keith Beauchamp, Roopali H. Desai, D. Andrew Gaona
*Counsel for Real Party in Interest*

Ballard Spahr LLP, Phoenix
By David J. Bodney, Craig C. Hoffman
*Counsel for Amicus Curiae, Phoenix Newspapers, Inc., and Kathy Tulumello*

---

**OPINION**

Judge Michael J. Brown delivered the opinion of the Court, in which Presiding Judge Randall M. Howe and Judge Brian Y. Furuya joined.

---

**B R O W N**, Judge:

¶1        In this public records case, Senate President Karen Fann, Senate Judiciary Committee Chairman Warren Petersen, and the Arizona Senate (collectively "the Senate") seek special action relief from the superior court's order rejecting the Senate's contention that it may withhold about 1,100 records relating to its election audit based on legislative privilege.  In this decision, we address whether (1) the privilege broadly shields all the records listed in the Senate's privilege log from disclosure under Arizona's public records law ("PRL"), A.R.S. § 39-121; and (2) the Senate globally waived the privilege for all records concerning the audit by making periodic and comprehensive public statements.

¶2        We conclude the Senate has not met its burden of showing that all communications listed in its privilege log may be withheld based on legislative privilege.  The superior court erred, however, in finding a global waiver of the privilege.

**BACKGROUND**

¶3        In March 2021, the Senate initiated an audit of approximately 2.1 million ballots cast during the November 2020 general election conducted in Maricopa County.  The Senate contracted with a private corporation, Cyber Ninjas, to serve as the primary vendor for the project.  As provided in the "Statement of Work," the Senate and Cyber Ninjas described the audit's scope as an "attempt to validate every area of the voting process to ensure the integrity of the vote," and would include auditing of "the registration and votes cast, the vote counts and tallies, the electronic voting system, as well as auditing the reported results."  They also agreed that at the audit's conclusion, the "primary deliverable" would be a report detailing all findings discovered during the audit, including recommendations "on how to prevent any detected weaknesses from being a problem in future elections (if applicable)."  Six months later, Cyber Ninjas delivered its audit report to the Senate, which then released the

2

report to the public and conducted a public hearing outlining the report's findings and conclusions.

**¶4**            Meanwhile, American Oversight, a nonprofit organization that advocates for government transparency, submitted requests to the Senate and Cyber Ninjas for production of public records relating to the audit. When the Senate refused to produce most of the requested records, American Oversight filed a complaint under the PRL to compel disclosure of the documents, including those in the possession or custody of Cyber Ninjas and its contractors.

**¶5**            The Senate moved to dismiss the complaint, asserting in part that legislative immunity barred the lawsuit. The superior court rejected the Senate's assertion and directed it to immediately disclose "all documents and communications relating to the planning and execution of the audit, all policies and procedures being used by the agents of the Senate Defendants, and all records disclosing specifically who is paying for and financing this legislative activity, as well as precisely how much is being paid," and "all other documents having 'a substantial nexus to the audit activities.'" This court accepted jurisdiction of the Senate's ensuing special action petition but denied relief. *Fann v. Kemp* ("*Fann I*"), 1 CA-SA 21-0141, 2021 WL 3674157, at *1, ¶ 1 (Ariz. App. Aug. 19, 2021) (mem. decision).

**¶6**            In *Fann I*, the Senate argued it was constitutionally immune from suit because the decision to withhold or disclose audit records is a "legitimate legislative function." *Id.* at *2, ¶ 12. We rejected that argument, reasoning in part that the legislature could have exempted itself from the PRL, but it chose not to. *Id.* at *3, ¶ 15. We noted the PRL is subject to many exceptions, but it does not afford a blanket exemption for the legislature. *Id.* at ¶ 16. We therefore concluded that "[a]llowing the legislature to disregard the clear mandate of the PRL would undermine the integrity of the legislative process and discourage transparency, which contradicts the purpose of both the immunity doctrine and the PRL." *Id.* at ¶ 17.

**¶7**            Addressing the Senate's separate contention that it did not have custody of the documents maintained by Cyber Ninjas, we reasoned that the Senate defendants have a duty under the PRL to maintain and disclose public records relating to their official duties and that such documents remain public even if possessed by a third party. *Id.* at *4, ¶¶ 21–23. Disagreeing with the Senate's argument that "the superior court's order would open the files of all government vendors to public inspection," we pointed out that the Senate had "outsourced its important legislative function to Cyber Ninjas," adding that "only documents with a

substantial nexus to government activities qualify as public records." *Id.* at *5, ¶ 24.

¶8        The Senate hired a third party to review and upload a "massive repository of records." The review included searching the personal cell phones of Senator Fann, as well as audit liaisons Ken Bennett and Randy Pullen. The Senate then disclosed about 22,000 records but withheld 422 records on the grounds of legislative privilege and redacted another 272 for the same reason. The Senate also withheld another 402 records based in part on legislative privilege. According to the Senate's privilege log, the emails contain "internal legislative discussions regarding [the] audit," while the text messages refer to "communications re: legislative investigation and audit process."

¶9        American Oversight moved to compel the Senate to produce the withheld records, asserting the Senate was now relying on legislative privilege to hide from public view "virtually every communication" relating to the audit between (1) Senator Fann, Senator Petersen, Bennett, and/or Pullen; and (2) any of those four individuals and anyone associated with Cyber Ninjas or the various contractors conducting the audit. American Oversight argued the Senate failed to meet its burden to show that the legislative privilege applies to the records in its privilege log, contending the Senate (1) provided insufficient information to conclude the audit discussions were "an integral part of the deliberative and communicative processes relating to proposed legislation," and (2) failed to show the communications at issue involve matters that were "necessary to prevent indirect impairment of such deliberations." American Oversight also argued (1) the Senate waived its right to assert the privilege, pointing to repeated public statements about the audit and the public hearing it conducted on the audit report; and (2) alternatively, the court should require the Senate to remedy its "inadequate" privilege log and provide representative samples of withheld documents for *in camera* review.

¶10        In response, the Senate argued that the audit itself "is a legislative matter within the scope of the privilege." According to the Senate, "courts have long recognized that investigations and other fact-finding inquiries are integral to, and inseparable from, the act of legislating," and thus the privilege includes "the communication or development of purely factual information" relating to those investigations. Addressing the audit's "intrinsic character as a legislative function," the Senate pointed to its power to issue subpoenas to Maricopa County to obtain election materials as well as this court's finding in *Fann I* that the audit is an "official legislative activity." The Senate therefore

asserted that (1) legislative privilege is a constitutional limitation on the PRL, (2) its privilege log was sufficient, and (3) no waiver of the privilege had occurred.

**¶11**         After oral argument, the superior court explained it would hold in abeyance whether an *in camera* inspection was necessary and declined to address the sufficiency of the privilege log. Addressing the merits, the court found that the Senate cannot assert the legislative privilege because: (1) communications about the audit are not an integral part of the deliberative process regarding proposed legislation; (2) disclosure of documents with a substantial nexus to the audit would not impair the deliberative legislative process; and (3) factual communications relating to procedures, protocols, practices, findings, or conclusions relating to the audit are not privileged. Describing the privilege as "qualified," the court further reasoned that American Oversight's interest on behalf of the public substantially outweighs the Senate's interest in non-disclosure. It also determined that even if the legislative privilege applies, the Senate waived it by releasing many public statements, issuing its comprehensive report, and holding the public hearing.

**¶12**         The Senate filed a petition for special action in this court, challenging the superior court's order granting American Oversight's motion to compel. Special action review is appropriate when there is no "equally plain, speedy, and adequate remedy by appeal." Ariz. R.P. Spec. Act. 1(a). Acceptance of special action jurisdiction is also appropriate to review purely legal issues of statewide importance and first impression. *Gilbert Prosecutor's Office v. Foster*, 245 Ariz. 15, 17, ¶ 5 (App. 2018). Because those factors are present here, we accept jurisdiction.

## DISCUSSION

### A.    Public Records Law

**¶13**         "Public records and other matters in the custody of any officer shall be open to inspection by any person at all times during office hours." A.R.S. § 39-121. Public officers are required to "maintain all records . . . reasonably necessary or appropriate to maintain an accurate knowledge of their official activities and of any of their activities that are supported by monies from this state or any political subdivision of this state." A.R.S. § 39-121.01(B). It is undisputed that the documents listed in the Senate's privilege log are public records.

**¶14**         "Consistent with the goal of openness in government," Arizona law broadly defines public records, creating a presumption that

requires disclosure of public documents. *Lake v. City of Phoenix*, 222 Ariz. 547, 549, ¶ 8 (2009); *see also Carlson v. Pima County*, 141 Ariz. 487, 491 (1984); *Phoenix Newspapers, Inc. v. Keegan*, 201 Ariz. 344, 351, ¶ 33 (App. 2001) ("The core purpose of the [PRL] is to allow the public access to official records and other government information so that the public may monitor the performance of government officials and their employees." (citation and quotation omitted)).

¶15　　　　Although the public's right to access public records is broad, it is not unlimited; the PRL is subject to statutory exemptions and the common law also imposes certain limitations on disclosure. *See Carlson*, 141 Ariz. at 490. For example, an officer subject to the PRL may "deny or restrict access where recognition of the interests of privacy, confidentiality, or the best interest of the state in carrying out its legitimate activities outweigh the general policy of open access." *Id.* at 491. A public official bears the burden of overcoming the presumption favoring disclosure. *Cox Ariz. Publ'ns, Inc. v. Collins*, 175 Ariz. 11, 14 (1993). Pertaining to this special action, the Senate relies only on the legislative privilege in defense of its decision to withhold from public disclosure the records listed in its privilege log.

¶16　　　　The Senate argues that when legislative privilege applies, it is "absolute, unqualified, and superordinate" to the PRL. As we noted in *Fann I*, 2021 WL 3674157, at *4, ¶ 19, the superior court described the audit as an "important public function" and "an official legislative activity." Such descriptions, however, do not mean that legislative privilege, even where applicable, necessarily defeats every public records request. *See id.* at *3, ¶ 16 (explaining that legislative immunity does not grant the legislature "a blanket exemption from compliance with the PRL" or an exemption "from lawsuits contesting a denial of access to public records"); *see also Carlson*, 141 Ariz. at 490 (explaining that common-law limitations on public access "do not preclude inspection entirely even where the competing interests of the common law limitations override the public's right to inspect certain documents"). But given the current posture of this case, we need not address whether the PRL may trump the legislative privilege in a particular situation. Instead, we consider only whether the privilege applies to every confidential communication relating to the audit between legislators, or between legislators and their agents.

## B.　　Legislative Privilege

¶17　　　　As a general principle, the doctrine of legislative privilege "stems from the doctrine of legislative immunity," which originates from federal common law, the Speech or Debate Clause of the United States

Constitution, and the Arizona Constitution. *Ariz. Indep. Redistricting Comm'n v. Fields*, 206 Ariz. 130, 136, ¶¶ 15–16 (App. 2003); U.S. Const. art. I, § 6, cl. 1 ("[F]or any Speech or Debate in either House, [legislators] shall not be questioned in any other Place."); Ariz. Const. Art. IV, pt. 2, § 7 ("No member of the legislature shall be liable in any civil or criminal prosecution for words spoken in debate."). Because Arizona's doctrines of legislative immunity and legislative privilege originate from the federal common law, the federal Speech or Debate Clause is persuasive in interpreting the scope of Arizona's counterpart. *Fields*, 206 Ariz. at 137, ¶ 16 n.4. The Speech or Debate Clause is rooted in separation of powers principles and "protects Members against prosecutions that directly impinge upon or threaten the legislative process." *Gravel v. United States*, 408 U.S. 606, 616 (1972).

¶18 Legislative *immunity* "prevents legislators, their aides, and their contractors from being criminally prosecuted or held civilly liable for their legislative activities." *Mesnard v. Campagnolo*, 251 Ariz. 244, 248, ¶ 12 (2021). "The legislative immunity doctrine also functions as a testimonial and evidentiary privilege." *Fields*, 206 Ariz. at 137, ¶ 17. When it applies, the legislative *privilege* protects legislators from being required to testify or produce evidence about their legislative activities or the motivations for those activities. *Id.* And "to the extent the legislative privilege protects against inquiry about a legislative act or communications about that act, the privilege also shields from disclosure documentation reflecting those acts or communications." *Id.* at 141, ¶ 32.

¶19 When a legislator asserts the legislative privilege, the legislator has "the burden of establishing that a matter is privileged." *Steiger v. Superior Ct.*, 112 Ariz. 1, 3 (1975). We narrowly construe constitutional, common law, and statutory privileges because they are "in derogation of the search for truth." *Fields*, 206 Ariz. at 136, ¶ 14 (quoting *United States v. Nixon*, 418 U.S. 683, 709–10 (1974)). We review de novo the application and scope of the legislative privilege. *See id.* We also review de novo whether a party has waived a privilege, which is a mixed question of fact and law. *Id.*

¶20 The Senate argues the superior court erred in characterizing Arizona's legislative privilege as "qualified." To the extent the court reasoned that the state legislative privilege is qualified and subject to the same balancing tests as the federal common law privilege, this was error. *See Favors v. Cuomo*, 285 F.R.D. 187, 208–09 (E.D.N.Y. 2012) (explaining that the federal common law privilege for state actors appearing in federal court is a qualified privilege, where the "court must balance the interests of the party seeking the evidence against the interests of the individual claiming

the privilege" to decide whether it applies).  The Senate also contends that because the legislative privilege is not qualified, it must apply absolutely to the records at issue.  This argument, however, conflates a court's decision about *when* the privilege applies with *how* it is applied.  When a matter plainly falls within the scope of the privilege after consideration of the particular circumstances in which the protection is claimed, it is absolute.  *See Edwards v. Vesilind*, 292 Va. 510, 525 (2016) ("Once a court determines that legislative privilege attaches, it is absolute in nature."); *see also Miller v. Transamerican Press, Inc.*, 709 F.2d 524, 528 (9th Cir. 1983).

**¶21**        Legislative privilege, however, does not apply to all legislative-related conduct in all circumstances, and a court must first determine whether the records or conduct at issue fall within the scope of the privilege.  That the court engages in this analysis does not make the privilege "qualified," as the Senate argues, but instead reflects the public policy of narrowly construing privileges.  *See Blazek v. Superior Ct.*, 177 Ariz. 535, 537 (App. 1994).  We reject the Senate's apparent contention that the privilege blocks disclosure under the PRL of any record that bears any connection to a legislative function.  *See Fields*, 206 Ariz. at 137, ¶ 18 (explaining that legislative privilege "does not extend to cloak 'all things in any way related to the legislative process'" (citation omitted)).  Instead, in this case, we view the privilege in light of its well-recognized purposes, together with the PRL's strong presumption in favor of disclosure.  The Senate has presented no evidence that the requested records might be used in any criminal or civil proceeding against any legislator, *id.* at 137, ¶ 17 (explaining that legislative privilege protects legislators from being required *to testify or produce evidence* about legislative activities), or that disclosing the records might in any way impede the "fundamental purpose" of the privilege, which is to uphold separation of powers principles, *see Gravel*, 408 U.S. at 618.  Under such circumstances, a legislator seeking to invoke the legislative privilege to prevent disclosure of public records under the PRL carries a heavy burden.

### 1.    Scope of the Privilege

**¶22**        The federal Speech or Debate Clause is interpreted "broadly" and covers "anything 'generally done in a session of the House by one of its members in relation to the business before it.'"  *United States v. Brewster*, 408 U.S. 501, 509 (1972) (citation omitted).  As such, the legislative privilege covers legislative acts by a lawmaker *and* a lawmaker's motivations for those acts.  *Steiger*, 112 Ariz. at 3.  But the legislative privilege "should not extend beyond what is necessary to accomplish the purposes of the [Speech and Debate] clause."  *Miller*, 709 F.2d at 528; *see Gravel*, 408 U.S. at 618

("Rather than giving the [Speech and Debate] clause a cramped construction, the Court has sought to implement its fundamental purpose of freeing the legislator from executive and judicial oversight that realistically threatens to control his conduct as a legislator."). For that reason, the privilege only protects activities within the "sphere of legitimate legislative activity." *See Gravel*, 408 U.S. at 624–25 (citation and quotation omitted); *see also Fields*, 206 Ariz. at 136, ¶ 15. Thus, whether a legislator may invoke the legislative privilege depends on whether the subject of the inquiry is a legitimate legislative act. *See Fields*, 206 Ariz. at 137, ¶ 17.

**¶23** Not everything a legislator does qualifies as a legislative act. *See Gravel*, 408 U.S. at 625 ("Legislative acts are not all-encompassing."). The Supreme Court explained in *Gravel* that "[t]he heart of the Clause is speech or debate in either House." *Id.* The Court continued:

> Insofar as the Clause is construed to reach other matters, they must be an integral part of the deliberative and communicative processes by which Members participate in committee and House proceedings with respect to the consideration and passage or rejection of proposed legislation or with respect to other matters which the Constitution places within the jurisdiction of either House. As the Court of Appeals put it, the courts have extended the privilege to matters beyond pure speech or debate in either House, but "only when necessary to prevent indirect impairment of such deliberations."

*Id.* (citation omitted).

**¶24** Arizona follows the analysis in *Gravel* to determine whether acts *other than* pure speech and debate are protected under the legislative privilege. *See Fields*, 206 Ariz. at 137, ¶ 18 (citing *Gravel* for the conclusion that "the privilege extends to matters beyond pure speech or debate in the legislature only when such matters are 'an integral part of the deliberative and communicative processes' relating to proposed legislation or other matters placed within the jurisdiction of the legislature, and 'when necessary to prevent indirect impairment of such deliberations.'" (citations omitted)). The legislator asserting the privilege has the burden to show that the *Gravel/Fields* framework is satisfied. *See Steiger*, 112 Ariz. at 3.

### 2. *Gravel/Fields* **Framework**

**¶25** The Senate does not contend the audit is protected as "pure speech and debate" occurring during in a legislative proceeding. *See Gravel*,

408 U.S. at 625; *Fields*, 206 Ariz. at 137, ¶ 18. Rather, it argues the audit is protected as "an integral part of the deliberative and communicative processes" concerning "passage or rejection of proposed legislation or with respect to other matters" within its jurisdiction. *Gravel*, 408 U.S. at 625. The Senate disputes the superior court's finding to the contrary, arguing that the legislative privilege automatically attaches to every legislative investigation. In support of this argument, the Senate notes that its legislative subpoenas related to the audit were upheld, in part, because the Senate issued them with "an eye to introducing possible reform proposals" and that the audit report suggested potential reforms for identified election issues. We decline to interpret the legislative privilege so broadly. *See Steiger*, 112 Ariz. at 4 ("None of the cases construing the privilege have extended it to the length sought by petitioner.").

¶26 It is far from certain that the audit was, or even could be, integral to the deliberative and communicative processes of the legislature. Nothing in the record shows that the prime purpose of the audit was to identify changes required to Arizona's voting laws, and it is undisputed that at no time during the audit was any election legislation pending before the legislature. Rather, as outlined in the Statement of Work, the audit's primary objective was to verify that election procedures were sufficiently observed. Indeed, the audit has more hallmarks of an administrative action than of any deliberative or communicative process integral to its legislative function. *See Fields*, 206 Ariz. at 137, 138, ¶¶ 18, 21 (noting that while the legislative privilege does not apply to administrative tasks, it does cover legislative acts that "bear[] the 'hallmarks of traditional legislation'" (citation omitted)). Therefore, the superior court's finding was not in error.

¶27 For the same reason, we reject the Senate's contention that the superior court committed reversible error by characterizing the public hearing on the final audit report as a "political act." On September 24, 2021, the Senate held a public hearing in the Senate chambers "to outline their findings and conclusions." As the court explained, no sworn or questioned witnesses were at the hearing, nor did any debate or deliberating occur. In fact, the only legislators formally present were Senators Fann and Petersen. The court found that the hearing was "much more akin to a press conference." Even if the court's label was incorrect, it makes no difference because the hearing lacked the hallmarks of traditional legislation. *See Fields*, 206 Ariz. at 138, ¶ 21 (explaining that an act is legislative when it reflects a "discretionary, policymaking decision that may have prospective implications" (citation omitted)).

¶28 The Senate argues the audit was a "fact-finding investigation[] in furtherance of potential future lawmaking projects." As such, the Senate contends the legislative privilege applies to every confidential communication between a legislator and their staff or agents relating to the "planning, execution and results of the Audit." The legislature has the power to conduct investigations aimed at determining the need for new legislation. *See Eastland v. U.S. Servicemen's Fund*, 421 U.S. 491, 504 (1975) ("[T]he power to investigate is inherent in the power to make laws because '[a] legislative body cannot legislate wisely or effectively in the absence of information respecting the conditions which the legislation is intended to affect or change.'" (citation omitted)). But the mere fact that the legislature conducted an investigation does not mean it is necessarily protected by the legislative privilege.

¶29 "The 'legislative process' does not . . . mean that everything related to the office of Congressman is shielded by the Clause. Only those acts generally done in the course of the process of enacting legislation are protected." *Steiger*, 112 Ariz. at 3; *see also Miller*, 709 F.2d at 530 ("Not all conduct preceding a legislative act falls within the privilege."). In *Steiger*, a member of Congress invoked the legislative privilege under the federal Speech or Debate Clause to prevent his former aide from being deposed about a meeting that took place with the member, his aide, and other individuals. 112 Ariz. at 2. The member argued the deposition related to a legislative investigation he contemplated undertaking. *Id.* at 3. Our supreme court rejected this argument because there was "no showing that the investigation was related to any pending congressional inquiry or legislation." *Id.* While the court recognized that "the impetus" for subsequent proposed legislation *may* have been related to the investigation, it declined to extend the legislative privilege to "all things in any way related to the legislative process." *Id.* at 4 ("Under such an expansive view there are few activities in which a legislator engages that could not be somehow related to the legislative process.").

¶30 In short, the Senate has made no showing that the audit was in any way related to any proposed legislation. The scope of the audit, as described in the Statement of Work, was to "validate every area of the voting process to ensure the integrity of the vote." The audit's stated purpose reflects no promise to propose legislation in the future. And while the audit might have revealed areas in Arizona's election process that could be the subject of new legislation, the connection between the audit and any future legislation is too tenuous to conclude that the audit could reasonably qualify as a legitimate legislative act. *See United States v. Renzi*, 651 F.3d 1012, 1022 (9th Cir. 2011) (noting there is a "marked distinction" between

performing a legislative act and promising to perform one in the future). Thus, we reject the Senate's broad assertion that the legislative privilege covers every legislative communication listed in its privilege log.

¶31 The Senate also contends the investigation is a matter placed within its jurisdiction, another element of the *Gravel/Fields* framework. But the Senate does not explain how that fact alone can trigger application of the legislative privilege. Not everything a legislator does, even if related to his or her official duties, can be classified as a legislative act under the framework. *See Brewster*, 408 U.S. at 515 ("In no case has this Court ever treated the Clause as protecting all conduct relating to the legislative process."); *see also Steiger*, 112 Ariz. at 4 ("Neither the history, literal language, nor judicial construction extend the privilege to include all things in any way related to the legislative process."). Only activities "done in the course of the process of enacting legislation" receive protection. *Steiger*, 112 Ariz. at 3.

¶32 The Senate further argues the superior court erred in ruling the privilege would apply to the audit only if the Senate could show the privilege was "necessary to prevent indirect impairment of" the Senate's protected deliberations. But this court's adoption and approval of the *Gravel* framework in *Fields* refutes that argument. *See Fields*, 206 Ariz. at 137, ¶ 18. Because the Senate has made no attempt to show how confidential treatment of its communications relating to the audit was necessary to prevent indirect impairment of its legislative deliberations, it has necessarily failed to meet its burden of establishing that each of the records listed in the privilege log are shielded from public disclosure.

### 3. Waiver

¶33 The superior court held that the Senate globally waived any claim to the legislative privilege by speaking publicly about the audit, publishing a report, and holding a public hearing addressing the report's findings and conclusions. The court reasoned that the Senate "cannot publicly release numerous public statements about the audit, release a comprehensive report about the audit, and then refuse to disclose documents and communications that are central and integral to the findings and conclusions of that report." In reaching this conclusion, the court cited *Fields*, where we held that the designation of a consulting expert as a testifying-expert witness waives the legislative privilege "(1) attaching to communications with those experts, or any materials reviewed by them, *and* (2) relating to the subject of the expert's testimony." 206 Ariz. at 144–45, ¶ 50.

**¶34** We agree with the superior court that the legislative privilege, unlike legislative immunity, can be implicitly waived when a legislator acts inconsistently with asserting the privilege. *Am. Cont'l Life Ins. Co. v. Ranier Constr. Co.*, 125 Ariz. 53, 55 (1980); *see also Favors*, 285 F.R.D. at 211–12; *Puente Ariz. v. Arpaio*, 314 F.R.D. 664, 671 (D. Ariz. 2016). This may occur during litigation when a party testifies to otherwise privileged information, or by communicating privileged information to outsiders. *Favors*, 285 F.R.D. at 211–12. But it cannot be the case that when a legislator makes a public statement about a particular matter, he or she automatically waives *all* legislative privilege claims over every communication relating to that matter. Adopting that principle would discourage legislators from providing public disclosures in any significant detail, undermining public transparency and thus defeating the purposes of the PRL. Moreover, the legislative privilege is personal; it must be waived or asserted by the specific legislator involved in the communication at issue. *Gravel*, 408 U.S. at 621–22, 622 n.13. Individual legislators have the right to assert the legislative privilege over their own communications relating to legitimate legislative acts, and the court's broad application of waiver could interfere with that right.

**¶35** The analogy to *Fields* is not persuasive, as our holding in that case was based in part on the particular needs of litigation; specifically, the needs of the opposing party when cross-examining a designated expert witness. 206 Ariz. at 143–45, ¶¶ 43–50. Further, in litigation, a legislator may face a choice between invoking the legislative privilege and waiving it by calling a witness who will be questioned on otherwise privileged matters. The record before us does not show that the Senate has globally waived the privilege for every record related to the audit. Thus, the Senate is not necessarily foreclosed from establishing the privilege applies as to individual records that could conceivably fall within the *Gravel/Fields* framework. We express no opinion, however, whether the Senate can meet its burden of showing that any of the records listed in the privilege log are protected by the legislative privilege.

## C. Attorneys' Fees and Costs

**¶36** American Oversight requests attorneys' fees and costs incurred in responding to the Senate's petition under A.R.S. § 39-121.02(B), which authorizes attorneys' fees and "other legal costs" incurred in a public records action if the party "seeking public records has substantially prevailed." We deny the request without prejudice, deferring it to the superior court's discretion pending the ultimate resolution of this litigation.

*See Tierra Ranchos Homeowners Ass'n v. Kitchukov*, 216 Ariz. 195, 204, ¶ 37 (App. 2007).

**CONCLUSION**

**¶37**      We accept jurisdiction but deny relief on the Senate's claim that the records listed in its privilege logs are broadly insulated from public disclosure on the grounds of legislative privilege.  We therefore affirm that portion of the superior court's ruling.  We grant relief in part by vacating the court's decision finding global waiver of the privilege.

**¶38**      We direct the Senate to immediately disclose to American Oversight all records listed in its privilege log that do not fall within the *Gravel/Fields* framework analyzed above.  To the extent the Senate claims that any such records are nonetheless shielded from disclosure by the legislative privilege, the Senate shall submit them forthwith to the superior court for an *in camera* inspection.  The court must then determine whether the records fall within the scope of the privilege as discussed herein, or whether they must be disclosed under the PRL.



AMY M. WOOD • Clerk of the Court
FILED:    AA

14