687 P.2d 1242

**Lawrence W. CARLSON, Plaintiff/Appellant,**

v.

**PIMA COUNTY, a body politic, and Clarence Dupnik, Sheriff, Defendants/Appellees.**

**No. 17196-PR.**

Supreme Court of Arizona, En Banc.

May 29, 1984.

J. Michael Tully, Tucson, for plaintiff/appellant.

Stephen D. Neely, Pima County Atty. by Steven L. Bosse, David L. Berkman, Tucson, for defendants/appellees.

FELDMAN, Justice.

Lawrence W. Carlson, the plaintiff in a defamation suit against Pima County and its Sheriff, Clarence Dupnik, petitions this Court for review of a decision of the court of appeals, 141 Ariz. 517, 687 P.2d 1272 (App.1984), affirming a verdict directed in favor of defendants. We accepted review to examine and clarify the concept of "public records" and the public's right of access thereto. We have jurisdiction under A.R.S. § 12–2101(B) and Rule 23, Rules of Civil Appellate Procedure, 17A A.R.S.

### Facts

The facts are not in dispute. On March 19, 1981, Lawrence Carlson (plaintiff), an inmate of the Pima County Jail, was implicated in an alleged assault on another inmate. The names of the three alleged of-

fenders and the details of the incident were written up in an "offense report." On a routine "beat check," a United Press International reporter obtained the information in the report. The story he wrote named the three alleged offenders and, when viewed in its worst light, told the public that Carlson had been accused of forcible oral sex with another inmate.

On July 20, 1981 Carlson filed a complaint for defamation against Pima County, the individual members of the Pima County Board of Supervisors, Pima County Sheriff Clarence Dupnik, and the Pima County Corrections Director. The case was tried before a jury. At the end of plaintiff's case, the court directed a verdict for all of the defendants except Sheriff Clarence Dupnik. Sheriff Dupnik was granted a directed verdict at the close of all the evidence; it is from the judgment entered on this verdict that plaintiff appealed. The court of appeals affirmed, holding that the trial court had not erred in directing a verdict for the Sheriff.

The court of appeals held that Sheriff Dupnik was a "public officer," A.R.S. § 39–121.01(A)(1). The court noted that the Sheriff must receive all persons committed to the jail and provide them with necessities, A.R.S. § 31–121; the Sheriff is charged with keeping the peace, A.R.S. § 11–441(A)(1); and he must "take charge of and keep the county jail and the prisoners therein", A.R.S. § 11–441(A)(5). Therefore, reasoned the court, the offense report was a public record which the Sheriff had the duty to make. Thus, the court concluded the public had a right of access to the report and its publication was privileged as a matter of law. Plaintiff challenges these conclusions.

*What Constitutes Public Records or Other Matters for the Purposes of the Public's Right to Inspection?*

Arizona's public records statutes, Title 39, provide a broad right of inspection to the public:

Public records and *other matters* in the office of any officer at all times during office hours shall be open to inspection by any person.

A.R.S. § 39–121 (emphasis supplied). However, Title 39 does not contain a definition of "public records" or "other matters". A 1975 enactment amended the public records statutes considerably, but still provides no definitions. Prior to these amendments, this Court had defined a public record [1] as:

one made by a public officer in pursuance of a duty, the immediate purpose of which is to disseminate information to the public, or to serve as a memorial of official transactions for public reference. [citations omitted]

Also a record is a 'public record' which is required by law to be kept, or necessary to be kept in the discharge of a duty imposed by law or directed by law to serve as a memorial and evidence of something written, said or done. [citations omitted].

It has also been held that a written record of transactions of a public officer in his office, which is a convenient and appropriate method of discharging his duties, and is kept by him as such, whether required by the express provision of law or not, is admissible as a public record. [citations omitted].

*Mathews v. Pyle*, 75 Ariz. 76, 78–79, 251 P.2d 893, 895 (1952). The 1975 amendment of A.R.S. § 39–121.01(A) and (B) appear to define those matters to which the public right of inspection applies more broadly. The statute requires a public "officer" to

maintain all records reasonably necessary or appropriate to maintain an accurate knowledge of their official activities and of any of their activities which are supported by funds from the state or any political subdivision thereof.

A.R.S. § 39–121.01(B). The 1975 amendments define an officer for purposes of this article as:

"public records" may be more narrow for purposes other than right of access or disclosure. We do not decide those issues today.

---

1. Whether something is a "public record" in evidentiary terms is not necessarily co-extensive with those records available to the public for inspection under § 39–121. The definition of

any person elected or appointed to hold any elective or appointive office of any public body and any chief administrative officer, head, director, superintendent or chairman of any public body.

A.R.S. § 39–121.01(A)(1).

█ Section 39–121.01(B) creates a statutory mandate which, in effect, requires all officers to make and maintain records reasonably necessary to provide knowledge of all activities they undertake in the furtherance of their duties. We think that the objective implicitly expressed in § 39–121.01 is to broadly define those records which are open to the public for inspection under § 39–121, thus obviating the need for any technical distinction between "public records" or "other matters," insofar as the right to inspection by the public is concerned. *Cf. Mathews v. Pyle, supra.* In so holding, we approve of dispensing with an initial determination of whether a document is a "public record" or an "other matter" and moving directly to a determination of whether or not the countervailing interests enunciated in *Mathews v. Pyle, supra,* override the policy of disclosure. *See Little v. Gilkinson,* 130 Ariz. 415, 636 P.2d 663 (App.1981), and *Church of Scientology v. City of Phoenix,* 122 Ariz. 338, 594 P.2d 1034 (App.1979).

### The Public's Right of Inspection

Despite the unlimited disclosure expressed by the wording of § 39–121, the availability of records for public inspection is not without qualification. There are numerous statutory exemptions to the general "open access" policy toward public records; for example: adoption records (A.R.S. §§ 8–120 and 8–121); consumer fraud investigations by the State Attorney General's Office (§ 44–1525); the records of the Department of Health Services (§§ 36–105, 36–136G(18), 36–340, 36–509, 36–714(B)(1)).

█ In *Mathews v. Pyle, supra,* by case law we recognized a limitation on the disclosure required by A.R.S. § 39–121. Various limitations were generally recognized by the common law, *see* 66 Am.Jur.2d

*Records and Recording Laws* § 12 (1973). *Mathews v. Pyle, supra,* however, dealt with a report which this Court determined *not* to be a public record, but which fell within the "other matters" wording of A.R.S. § 39–121. After defining the particular report as an "other matter," we qualified the statutory right of public inspection, recognizing the countervailing interests where the document is either confidential or disclosure would be detrimental to the best interests of the state. *Id.,* 75 Ariz. at 80, 251 P.2d at 896. Arguably, since *Mathews v. Pyle* dealt specifically with something determined to be an "other matter," rather than a public record, that decision could be construed as adopting a qualified limitation on access only for "other matters," with no limitation of access to those records defined as "public records". We hold today that the common law limitations to open disclosure are not based on any technical dichotomy which might be argued under the "public records" or "other matters" wording of A.R.S. § 39–121, but rather are based on the conflict between the public's right to openness in government, and important public policy considerations relating to protection of either the confidentiality of information, privacy of persons or a concern about disclosure detrimental to the best interests of the state. This has been the general basis for the common law rule. The enactment of A.R.S. § 39–121.01 did not expressly limit the doctrine of *Mathews v. Pyle* and we do not believe that the current statutory scheme, which is all-inclusive in its requirements of record keeping, was intended by the legislature to overrule the balancing scheme adopted in *Mathews v. Pyle.* However, we do think that the combined effect of § 39–121 and §§ 39–121.01; 121.02 and 122 evince a clear policy favoring disclosure.

█ These qualifications as to public access do not preclude inspection entirely even where the competing interests of the common law limitations override the public's right to inspect certain documents. Particularly where the competing interest

is one of confidentiality or privacy, a practical alternative to the complete denial of access would be deleting specific personal identifying information, such as names. Other alternatives exist. In *Mathews v. Pyle, supra,* we ordered an *in camera* inspection of the document by the trial court for judicial consideration of whether the *Mathews* interest-balancing applied. *In camera* inspection was also approved by the court of appeals in *Little v. Gilkinson, supra.*[2]

■ In light of our statutory policy favoring disclosure, we think that the best procedure is that all records required to be kept under A.R.S. § 39–121.01(B), are presumed open to the public for inspection as public records. While access and disclosure is the strong policy of the law, the law also recognizes that an unlimited right of inspection might lead to substantial and irreparable private or public harm; thus, where the countervailing interests of confidentiality, privacy or the best interests of the state should be appropriately invoked to prevent inspection, we hold that the officer or custodian may refuse inspection. *Mathews v. Pyle, supra.* Such discretionary refusal is subject to judicial scrutiny. A.R.S. § 39–121.02 provides that a person who has been denied access may appeal that denial by special action to superior court (subsection (A)), which may order that access be provided. If that court determines that access was wrongfully denied and that the custodian acted in bad faith or in an arbitrary or capricious manner, the court may also award legal costs, including reasonable attorney's fees, (subsection (B)). The statute provides that any person wrongfully denied access shall have a cause of action against the officer or

public body for any resulting damages, (subsection (C)).

In conclusion, then, we hold that A.R.S. § 39–121.01(B) requires the keeping of records sufficient to provide the public with "knowledge" of all of the activities of a public officer and of the manner in which he conducts his office and performs his duty. For purposes of inspection and access, all records required to be made and maintained by § 39–121.01(B) and preserved by (C) are to be available for inspection under § 39–121 and copying under § 39–121.01(D), subject to the official's discretion to deny or restrict access where recognition of the interests of privacy, confidentiality, or the best interest of the state in carrying out its legitimate activities outweigh the general policy of open access. Any abuse in the denial of public access may be remedied under A.R.S. § 39–121.02, et seq.[3]

*The Release of This Report was Privileged*

■ In the case at bench, we hold that the "offense report" was a public record for purposes of § 39–121, thus affirming the finding of the trial court and approving the opinion of the court of appeals. Absent a showing of malice, the release and publication of that report was protected against a defamation action by a qualified privilege. *See Roscoe v. Schoolitz,* 105 Ariz. 310, 464 P.2d 333 (1970). The trial court held that the Sheriff was protected by privilege because the offense report was a public record, which the Sheriff, as a public officer, was required to keep in the furtherance of his statutory duties, and as such, was open to the public. Therefore, the trial court reasoned, any publication of such reports was covered by an absolute

---

**2.** The court of appeals did not order *in camera* inspection of the police investigative reports in *Church of Scientology v. City of Phoenix, supra,* but rather instructed the trial court to make copies of the documents for the appellant. However, the court noted that the City of Phoenix Police Department never suggested that the documents in question revealed any confidential information sources or information gathering techniques, or that disclosure would involve

any invasion of privacy. "Indeed appellee has never specifically articulated any potential harm likely to result from disclosure of the documents." 122 Ariz. at 339, 594 P.2d at 1035.

**3.** Access may also be limited by restrictions on commercial use (§ 39–121.03), and restrictions specifically imposed by law on certain records or documents.

privilege. However, for the express purpose of supplementing the findings of fact in the event that an appellate court would find an absolute privilege not to exist, the trial court made an additional finding that the evidence showed no ill-will or malice on the part of the Sheriff or his employee who actually permitted access to the report.

There is no absolute privilege in Arizona for public officers and employees of the state and its political subdivisions. *Portonova v. Wilkinson,* 128 Ariz. 501, 503, 627 P.2d 232, 234 (1981). It would be anomalous to hold that the publication of records is accorded an absolute privilege where we hold that the public's right to inspect records is a qualified one. The holding of the court of appeals that the Sheriff's publication of the report was privileged does not expressly state whether that was an absolute or qualified privilege, but the court did note that there was no evidence of malice or ill-will. We hold that the Sheriff was protected by a qualified privilege here and that since there was no showing of ill-will or malice in the release of this report and the action was one for defamation only, the qualified privilege was properly invoked. The judgment entered on the directed verdict is affirmed. The opinion of the court of appeals is approved, as supplemented by this opinion.

HOLOHAN, C.J., GORDON, V.C.J., and HAYS and CAMERON, JJ., concur.