27 P.3d 814

PHOENIX NEWSPAPERS, INC., an Arizona corporation, and Nicole Carroll, Petitioners–Appellants,

v.

Jaime A. MOLERA[1] and State of Arizona Department of Public Instruction, Respondents–Appellees.

No. 1 CA–CV 00–0559.

Court of Appeals of Arizona, Division 1, Department A.

June 28, 2001.

As Amended July 2, 2001.

to our court under supplemental certificate of record.

1. Lisa Graham Keegan resigned her position as the State Superintendent of Public Instruction on May 10, 2001. Jaime A. Molera was appointed to replace her. Pursuant to Rule 27(c), Arizona Rules of Civil Appellate Procedure, Jaime A. Molera has been substituted as a party in the place and stead of Lisa Graham Keegan.

Morrison & Hecker L.L.P., by James F. Henderson, Carrie J. Brennan, Phoenix, Attorneys for Petitioners–Appellants.

Janet Napolitano, The Attorney General, by Lynne C. Adams, Assistant Attorney General, Elliot Talenfeld, Assistant Attorney General, Gretchen Schneidau, Assistant At-

torney General, Phoenix, Attorneys for Respondents–Appellees.

## OPINION

PATTERSON, Judge.

¶ 1 Phoenix Newspapers, Inc. ("PNI"), publisher of *The Arizona Republic* newspaper, brings this appeal from a denial of its request for special action relief in the superior court. The appeal challenges whether the state board of education timely "publish[ed] and distribute[d]" its reports containing student achievement test scores pursuant to Arizona Revised Statutes Annotated ("A.R.S.") section 15–743(A) (Supp.2000) and whether PNI was entitled to inspect and copy the reports and the underlying test results pursuant to Arizona's laws requiring access to public records before the board's press conference to release the information to the public.

## FACTS AND PROCEDURAL HISTORY

¶ 2 The Stanford 9 Achievement Test is a national achievement test covering reading, writing, and mathematics administered yearly between April 1 and May 1 to students in Arizona schools in grades three through twelve. *See* A.R.S. § 15–741 (Supp.2000). Pursuant to A.R.S. section 15–743(A), the state board of education must provide annual reports "for every school and district and the state as a whole," containing specified information about the achievement test scores. The board must submit the reports to "school districts, the legislature and the county school superintendents" and "shall make them available to the public." Under the deadline provided in the statute, "[t]he state board shall publish and distribute the reports by July 1. . . ."

¶ 3 Pursuant to subsection (C) of the same statute, the board must also provide copies of the test results for each school district to that school district. As further provided in that subsection, "[n]o results may be released to the public until ten days after the reports are provided to each school district."

¶ 4 In the year 2000, the July 1st deadline by which the annual reports were to be released fell on a Saturday. The department

of education, which is administered by the board and the superintendent of public instruction, *see* A.R.S. section 15–231, planned to release the reports on the next business day, Monday, July 3, 2000, at a press conference to be held at 11:00 a.m.

¶ 5 Beginning on June 27, 2000, several employees of *The Arizona Republic* made written or oral requests to the department to receive the reports and the test results before the release time chosen by the department. They asked to receive the information alternatively as early as June 28th, at least sometime before July 1st, or at the very least, by 8:30 a.m. on July 3rd, to meet a newspaper deadline, instead of having to wait for the 11:00 a.m. press conference on July 3rd. All of these requests were refused.

¶ 6 On June 29, 2000, PNI and newspaper employee Nicole Carroll (hereinafter collectively "PNI") filed a special action in the Superior Court of Arizona in and for Maricopa County against the department and the superintendent of public instruction claiming that it had been wrongfully denied access to the requested records and urging that the department be required to release them for inspection and copying prior to the release date chosen by the department. *See* A.R.S. § 39–121.02(A). PNI also charged that the custodian of the records had acted in bad faith or in an arbitrary or capricious manner in denying access to the records and that PNI was therefore entitled to its costs and attorney's fees pursuant to A.R.S. section 39–121.02(B).

¶ 7 The trial court heard the matter that same day and denied the relief requested by PNI. The trial court found that the department was entitled to deny access to the requested information until July 1st, the date certain set forth in A.R.S. section 15–743(A) for release of the reports. Because July 1st fell on a Saturday, the court also found that the board was entitled to wait to release the reports until the next business day, July 3, 2000. Further, the court found that the board was entitled to release the reports in an orderly manner at the time it chose on that date instead of being required to provide access earlier in the day to PNI.

¶ 8 Employees of *The Arizona Republic* nevertheless turned up at the department at 8:30 a.m. requesting early release, which was again refused. The department released the reports at its 11:00 a.m. press conference on Monday, July 3rd, as it had planned.

¶ 9 On July 7, 2000, PNI moved for reconsideration of the trial court's ruling. The trial court determined that the request to release these particular records was now moot since the reports had already been released by that time. It chose to rehear arguments on some of the underlying legal issues concerning the date and time the board should have released the reports, but ultimately denied the motion for reconsideration.

 ¶ 10 PNI appeals to this court challenging the trial court's rulings in interpreting A.R.S. section 15–743 and in determining how that statute is to be reconciled with Arizona's laws allowing access to public information. This court reviews issues of statutory interpretation *de novo*. *Hawkins v. Dep't of Econ. Sec.,* 183 Ariz. 100, 103, 900 P.2d 1236, 1239 (App.1995). Likewise, we review issues of "denial of access" to public records *de novo*. *Scottsdale Unified Sch. Dist. No. 48 v. KPNX Broadcasting Co.,* 191 Ariz. 297, 302, 955 P.2d 534, 539 (1998). Initially, however, we address appellees' question whether PNI's appeal is moot.

## DISCUSSION

### Mootness

 ¶ 11 The appellees argue that because the public records in question were released to the public almost a year ago, the appeal no longer presents a controversy and the issues PNI raises should not be considered by this court. We disagree. Even appellees acknowledge that the issue of statutory attorneys' fees pursuant to A.R.S. section 39–121.02 is not moot. One of the steps in deciding whether the statutory fees should be allowed is to determine whether a person was wrongfully denied access to or the right to copy a public record. PNI'S argument that it was wrongfully denied access at the time it requested it, therefore, needs to be decided in order to determine whether it

might be entitled to the statutory award of attorney's fees. Accordingly, the issues in this appeal are not moot.

 ¶ 12 In addition, the mootness doctrine is not mandated by the Arizona Constitution, but is solely a discretionary policy of judicial restraint. *Fisher v. Maricopa County Stadium Dist.,* 185 Ariz. 116, 119, 912 P.2d 1345, 1348 (App.1995). Arizona courts may consider an appeal that has become moot if there is either an issue of great public importance or an issue capable of repetition yet evading review. *Fraternal Order of Police v. Phoenix Employee Relations Bd.,* 133 Ariz. 126, 127, 650 P.2d 428, 429 (1982); *Exodyne Props., Inc. v. City of Phoenix,* 165 Ariz. 373, 376, 798 P.2d 1382, 1385 (App.1990).

 ¶ 13 The present case does not fit within the exception to the mootness rule for an issue of great public importance. Whether PNI is entitled to receive the reports or test results a few days or hours before they are released to the public as a whole may be of importance to PNI, but to the public is a matter of trivial importance.

 ¶ 14 This case does fall within the other exception to the mootness doctrine, however, because it is capable of repetition yet it evades review. Presumably, PNI may try year after year to obtain the reports or test results shortly before they are released to the public as a whole. Because of the short time period between when this information comes into existence within the department and when it is released to the public as a whole pursuant to A.R.S section 15–743(A), and because the superior court might continue to rule against PNI in any special action brought in the future, PNI might never be able to have appellate court review of the issue. Therefore, we address the merits of the appeal.

### Public Access

¶ 15 PNI argues that in denying it access to the records on each of the dates and times the newspaper employees requested them, the appellees were violating Arizona's public records laws. Those laws require that "[p]ublic records and other matters ... shall be open to inspection by any person at all

times during office hours." A.R.S. § 39–121 (Supp.2000).

■ ¶ 16 Appellees do not dispute that the annual reports and the test results are "public records" or at least "other matters" within the meaning of A.R.S. section 39–121. There are, however, well-recognized statutory exceptions to this public right of inspection. *KPNX,* 191 Ariz. at 300, 955 P.2d at 537. Moreover, the public right of inspection may also be curtailed in the interest of "confidentiality, privacy or the best interests of the state." *Carlson v. Pima County,* 141 Ariz. 487, 491, 687 P.2d 1242, 1246 (1984). If these interests outweigh the public's right of inspection, the state can properly refuse inspection, but the state bears the burden of proof in the weighing process because of a clear policy favoring disclosure. *Id.* at 490–91, 687 P.2d at 1245–46.

¶ 17 In this case, no statute exempts the requested documents from public inspection. The question presented, though, is whether appellees had statutory authority pursuant to A.R.S. section 15–743(A) to delay access to the records for the time period it did in this case, or, conversely, a statutory duty to produce the documents at any particular time.

¶ 18 A.R.S. section 15–743(A) imposes on the board the task of compiling the achievement test score information and preparing reports pertaining to "every school and district and the state as a whole." The board must submit the reports to the school districts and to the others specifically designated and also "make them available to the public." The statute designates "July 1" as the time by which the board shall "publish and distribute the reports." *Id.*

■ ¶ 19 We find it clear from the statute that the board is responsible for providing complete and accurate reports of the test results. *Cracchiolo v. State,* 146 Ariz. 452, 457, 706 P.2d 1219, 1224 (App.1985) (recognizing that administrative agencies have powers either expressly or implicitly conferred upon them by the legislature and that not all standards accompanying the grant of powers need be set forth). As to the reports, therefore, we agree with the superior court's conclusion that the board had discretion to determine when it was finished with its drafting and editing process so as to have complete and accurate reports ready for public dissemination and to choose to release them to the public in an orderly manner within the time allowed by A.R.S. section 15–743(A) and any other applicable statutes or rules that might have extended the time. The general public records law does not override the specific statutory directive in A.R.S. section 15–743(A), which gives the board discretion to determine when the reports are ready to be viewed by the public. *Berry v. State Dep't of Corrs.,* 145 Ariz. 12, 13, 699 P.2d 387, 388 (App.1985)(recognizing that a specific statute denying or delaying access controls over a general statute requiring disclosure of public records).

¶ 20 PNI argues that it should at least have been allowed access to the test results, which it had also requested. It argues that because it presented evidence that the school districts had had the test results for at least ten days before it made its request for them, as required by A.R.S. section 15–743(C), it should not have been denied access to those particular records.

¶ 21 We note that PNI has misread A.R.S. section 15–743(C), which states that "[n]o results may be released to the public until ten days after the *reports* are provided to each school district." (Emphasis added.) PNI provided no evidence that the "reports" as opposed to the "test results" had been supplied to the school districts more than ten days before making its requests for access to the test results.

■ ¶ 22 For the above-mentioned reasons, as long as the board released the reports by the time required by law, we find no denial of access.

### Meaning of "By July 1"

¶ 23 The version of A.R.S. section 15–743(A) that went into effect in 1991 had provided that the board publish and distribute the reports (then referred to as "report cards") "by no later than July 1." 1990 Ariz. Sess. Laws, ch. 233, § 10. In 1994, the legislature amended the statutory language to provide for the board to publish and dis-

tribute the report "by July 1." 1994 Ariz. Sess. Laws, 9th s.s., ch. 2, § 6. Under the prior version, July 1st was definitely included within the time period the board had for publishing and distributing the reports. PNI argues that since the word "by" when used before a date can mean that something must be done before that date, we should conclude that the legislature, in changing the wording of the statute, meant to exclude July 1st as the time in which the reports must be published and distributed. If so, it argues that the board acting through the department was not permitted to deny PNI's request for access before the end of the day on June 30th and certainly not when it requested it at 8:30 a.m. on July 3rd.

¶ 24 We disagree with PNI's contention that the change in the statutory language proves that the legislature intended to require that the reports be distributed "before" July 1st. The word "by" when used before a date certain may mean "before a certain date," but it just as readily may mean "on or before a certain date." Both definitions of the word are given in *Black's Law Dictionary* 201(6th ed.1990).

¶ 25 In our opinion, if in substituting the word "by" for the phrase "by no later than" the legislature meant to change the statute to require the reports to be released "before" July 1, we believe it would have chosen a word such as "before," which leaves no ambiguity as to whether the end date is to be excluded. Since there are no legislative notes concerning the change in wording, we adopt the meaning of "by July 1" for our purposes to include July 1 up to the close of business on that day. We find it more likely that the legislature was trying to eliminate wordiness in the sentence without noticing the possible ambiguity it was creating. We note that other changes made in the statute at that same time were of a similar nature.

### Abandonment of Other Issues

¶ 26 In denying relief to PNI, part of the superior court's reasoning was that because July 1, 2000, fell on a Saturday, the board was entitled to have until the end of the next business day, which in this case was Monday, July 3rd, to release the reports to the public. PNI has chosen not to dispute this part of the superior court's ruling. It has stated in its reply brief that the issue of July 1st falling on a Saturday is irrelevant. It has chosen to make no argument that the superior court's determination on that point was incorrect. We, therefore, find that PNI has waived this issue. *See Jones v. Burk,* 164 Ariz. 595, 597, 795 P.2d 238, 240 (App. 1990) (holding that issues not clearly raised and argued in a party's appellate brief constitute waiver of error on review). We take no position on whether the superior court resolved the issue correctly.

### CONCLUSION

¶ 27 For the reasons explained in this opinion, we find no error in the superior court's determination that PNI was not entitled to inspect and copy the reports or the test results prior to the time the department released the reports to the public at its press conference on Monday, July 3, 2000, at 11:00 a.m. Because PNI was not wrongfully denied access to these documents, it was not entitled to an award of attorneys' fees pursuant to A.R.S. section 39–121.02(B) (Supp.2000). We affirm the judgment of the superior court.

CONCURRING: REBECCA WHITE BERCH, Judge, NOEL FIDEL, Judge.