IN THE
# SUPREME COURT OF THE STATE OF ARIZONA

_____

**AMY SILVERMAN, ET AL.,**
*Plaintiffs/Appellees,*

*v.*

**ARIZONA DEPARTMENT OF ECONOMIC SECURITY,**
*Defendant/Appellant.*

_____

No. CV-23-0181-PR
**June 3, 2024**

_____

Appeal from the Superior Court in Maricopa County
The Honorable Sally Schneider Duncan, Judge, *Retired*
No. LC2021-000182-001

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED**

_____

Opinion of the Court of Appeals, Division One
255 Ariz. 348 (App. 2023)

**VACATED**

_____

COUNSEL:

Gregg P. Leslie, Zachary R. Cormier, Samuel Lederman (argued), Markus Auers (argued), First Amendment Clinic, Public Interest Law Firm, Sandra Day O'Connor College of Law, Arizona State University, Phoenix, Attorneys for Amy Silverman, et al.

William A. Richards (argued), Karen J. Moskowitz, Richards & Moskowitz PLC, Phoenix, Attorneys for Arizona Department of Economic Security

Timothy Sandefur, Parker Jackson, Scharf-Norton Center for Constitutional Litigation at the Goldwater Institute, Phoenix, Attorneys for Amicus Curiae Goldwater Institute

Jared G. Keenan, Lauren K. Beall, Rachel Carroll, American Civil Liberties Union Foundation of Arizona, Phoenix, Attorneys for Amicus Curiae American Civil Liberties Union of Arizona

VICE CHIEF JUSTICE TIMMER authored the Opinion of the Court, in which JUSTICES BOLICK, LOPEZ, BEENE, MONTGOMERY, KING and PELANDER (Ret.) joined.[*]

VICE CHIEF JUSTICE TIMMER, Opinion of the Court:

¶1        Arizona law generally shields from public inspection all records maintained by the Arizona Department of Economic Security ("ADES") concerning abuse, exploitation, or neglect of vulnerable adults. A.R.S. § 46-460(A).   The "bona fide research" exception to this prohibition authorizes ADES to release records for inspection to a person conducting bona fide research.   § 46-460(D)(8).   The primary issue before us is whether investigative journalists can engage in "bona fide research."   We conclude they can.   And in reaching our conclusion, we also define "bona fide research" and provide guidance concerning ADES's exercise of discretion in deciding whether and in what manner to release records under the exception.

## BACKGROUND

¶2        Adult Protective Services ("APS") operates as a program within ADES.   *See* A.R.S. §§ 46-451 to -474.   APS identifies vulnerable adults being abused, exploited, or neglected and then facilitates the

---

[*]   Chief Justice Brutinel is recused from this matter.   Pursuant to article 6, section 3 of the Arizona Constitution, Justice John Pelander (Retired) of the Arizona Supreme Court is designated to sit on the case until it is finally determined.

delivery of protective services to those adults. *See* §§ 46-451(A)(10), -452(A). It may also establish a multidisciplinary team that includes law enforcement, human service agencies, adult disability groups, and local tribal governments. *See* § 46-461(A). This team provides education and develops resources to assist ADES in protecting vulnerable adults. *See* § 46-461(B). "Vulnerable adults" are adults who are unable to protect themselves due to a physical or mental impairment. *See* § 46-451(A)(12).

¶3 In the course of its work, APS receives and evaluates reports of abuse, exploitation, and neglect and maintains a registry of substantiated reports. *See* §§ 46-452(A)(1); -454 (A), (D)–(G); -459(A). Unsurprisingly, APS's records contain personally identifying information concerning vulnerable adults, caregivers, and the person reporting abuse, exploitation, or neglect. *See* § 46-454(A), (C)–(E). The records also contain vulnerable adults' medical, psychiatric, and financial records; property inventories and audits; photographs documenting abuse; and peace officers' reports. *See* § 46-454(F)–(J). Section 46-460 shields these sensitive records from public disclosure, apart from specified exceptions.

¶4 Amy Silverman is a freelance investigative journalist who writes stories for multiple news publications, including the Arizona Daily Star in Tucson, which is owned and operated by TNI Partners. She writes extensively about issues affecting individuals with intellectual and developmental disabilities. In 2020, Silverman submitted several unsuccessful requests to ADES that sought access to public records under its custody and control. Here, we are concerned only with her May 7 request, which seeks access to "[APS] reports, investigations and other materials that provided the data for APS quarterly reports from April 2019 to March 2020." She asked only for materials concerning closed cases and acknowledged that ADES would likely redact names and addresses.

¶5 ADES denied Silverman's request on May 29. It explained both that § 46-460 prohibits ADES from releasing APS records unless a listed exception applies and that no such exception applies here. Nearly five months later, on October 23, Silverman demanded that ADES grant her request because it fits within an exception authorizing disclosure of records to persons engaged in "bona fide research," if personally identifying information is redacted. *See* § 46-460(D)(8). She claimed the records would assist her in reporting how ADES either protects or fails to protect vulnerable adults. ADES declined to change its stance.

¶6            Silverman and TNI Partners (collectively "Silverman") sued ADES, asking the superior court to compel production of the requested records under the "bona fide research" exception.   ADES moved to dismiss the complaint pursuant to Arizona Rule of Civil Procedure 12(b)(6).   It argued that the records sought are statutorily protected from production under § 46-460 and no exception applies.   After full briefing and oral argument, the court found that Silverman's journalistic activities qualify as "bona fide research" under § 46-460(D)(8), and it therefore denied ADES's motion.   Without awaiting a further request, the court entered a judgment on its own initiative, compelling ADES to produce the requested documents after redacting personally identifying information.

¶7            The court of appeals affirmed in part, reversed in part, and remanded the case back to the superior court.   On remand, the superior court was to rule on Silverman's request using the court of appeals' definition of § 46-460(D)(8)'s bona fide research exception.   *See Silverman v. Ariz. Dep't of Econ. Sec.*, 255 Ariz. 348, 350–51 ¶ 2 (App. 2023). Specifically, the court of appeals concluded that "research" under the exception must be conducted for "educational, administrative, or scientific purposes."   *See id.* at 354 ¶ 20.   The court also concluded that a requesting party must demonstrate that this research is "bona fide" by at least "provid[ing] detailed descriptions that outline: the specific information sought and the project's purpose, expected outcomes, and the methodology the researcher will employ to maintain the confidentiality of the records."   *See id.* at 355 ¶ 24.   Notably, the court decided that if the bona fide research exception applies, ADES still has discretion whether to disclose APS records, as long as ADES does not exercise that discretion arbitrarily or capriciously.   *See id.* ¶ 29.   Finally, the court stated that anyone, including journalists, may qualify for the bona fide research exception.   *See id.* at 354 ¶ 20.

¶8            Neither party is satisfied with the court of appeals' opinion, so both filed petitions for review.   In a nutshell, ADES challenges the court's interpretation of the bona fide research exception, and Silverman takes umbrage with the need for remand to determine whether she meets that exception.[1]   We accepted review of both petitions to define "bona

---

[1]   ADES also criticizes the court of appeals' interpretation of § 46-460(D)(8) as impermissibly advisory "because the parties placed no real facts before

fide research" under § 46-460(D)(8) and then decide whether the record here is sufficient to determine if Silverman's request meets the bona fide research exception. We also asked the parties to brief whether our statutory interpretation would implicate any constitutional issues. We have jurisdiction under article 6, section 5(3) of the Arizona Constitution.

**DISCUSSION**

**¶9** The superior court effectively entered summary judgment in favor of Silverman. Therefore, we review that judgment de novo. *Glazer v. State*, 237 Ariz. 160, 167 ¶ 29 (2015). Similarly, we review matters of statutory interpretation de novo. *State v. Jones*, 246 Ariz. 452, 454 ¶ 5 (2019).

**A. "Bona Fide Research" Under § 46-460(D)(8) Occurs When The Researcher Engages In A Good Faith And Genuine Study To Acquire More Knowledge, Discover New Facts, Or Test New Ideas Concerning Reporting Or Stopping The Abuse, Exploitation, Or Neglect Of Vulnerable Adults.**

**¶10** Arizona provides a general right to inspect public records. *See* A.R.S. § 39-121 ("Public records and other matters in the custody of any officer shall be open to inspection by any person at all times during office hours."). But this open access policy is qualified by numerous statutory exceptions restricting access, including § 46-460. *See Carlson v. Pima County*, 141 Ariz. 487, 490 (1984).

**¶11** Section 46-460(A) states in relevant part that "[u]nless otherwise provided by law . . . all information that is gathered or created by [APS] and that is contained in [APS] records is confidential and may

---

the courts, leaving them insufficient context to meaningfully define the term." *See Bennett v. Brownlow*, 211 Ariz. 193, 196 ¶ 16 (2005) (noting courts generally refrain from issuing advisory opinions). ADES misapprehends the basis for statutory interpretation. Section 46-460(D)(8)'s meaning does not depend on or vary with the facts of any particular public records request. Rather, the statute's meaning depends on the legislature's intent, as expressed in § 46-460(D)(8)'s language. *See Glazer v. State*, 244 Ariz. 612, 614 ¶ 9 (2018) ("We construe statutes to give effect to the legislature's intent."). Thus, the court of appeals' opinion is not advisory.

not be released except as provided in subsections B, C and D of this section." Thus, unlike with other public records, APS records are presumptively restricted from release. The bona fide research exception to this general prohibition is at issue here and provides:

> D. Employees of [ADES] may release any information that is otherwise held confidential under th[e] section, except the reporting source's identity, to the following or under any of the following circumstances:

> . . . .

> 8. Any person who is engaged in bona fide research, if no personally identifying information is made available, unless it is essential to the research and the director or the director's designee gives prior approval. If the researcher wants to contact a subject of a record, the subject's consent must be obtained by the department before the contact.

§ 46-460(D)(8). What is "bona fide research"? The legislature did not explain, thus tasking us with identifying its intended meaning. *See Glazer*, 244 Ariz. at 614 ¶ 9.

¶12 We start with § 46-460(D)(8)'s language because it is the best indicator of meaning. *Id.* If that language is plain and unambiguous when read in context, we apply it without further analysis. *Id.* If a provision has more than one reasonable interpretation, it is ambiguous. *Ryan v. Napier*, 245 Ariz. 54, 64 ¶ 41 (2018). We resolve an ambiguity by examining secondary factors, like the statute's subject matter and purpose, and the effects and consequences of alternate interpretations. *Id.*

### 1. What is "research" under § 46-460(D)(8)?

¶13 When read in isolation, "research" has a broad meaning. For example, "research" could refer to the study of *any* subject without limitation, such as ascertaining how the government generally uses its resources. But when interpreting the term within its broader statutory framework, we find a narrower meaning.

¶14　　　　We use the commonly accepted meaning for "research" unless § 46-460(D)(8)'s context suggests a special meaning. *See State v. Reynolds*, 170 Ariz. 233, 234 (1992). Black's Law Dictionary defines "research" as the "[s]erious study of a subject with the purpose of acquiring more knowledge, discovering new facts, or testing new ideas" and "finding information that one needs to answer a question or solve a problem." *Research*, Black's Law Dictionary (11th ed. 2019); *see Chaparro v. Shinn*, 248 Ariz. 138, 141 ¶ 14 (2020) (noting that courts generally consult dictionary definitions to ascribe ordinary meaning to a term). Similarly, the Merriam-Webster Dictionary defines "research" as "studious inquiry or examination," "the collecting of information about a particular subject," "careful or diligent research," or "to search or investigate exhaustively." *Research*, Merriam-Webster.com, https://www.merriam-webster.com/dictionary/research (last visited May 28, 2024).

¶15　　　　We accept these definitions, but the context in which "research" is used requires us to refine the term by limiting what can form the basis for "research" under § 46-460(D)(8). *See Reynolds*, 170 Ariz. at 234. Section 46-460(A) prohibits disclosure of *all* APS records except in identified circumstances, including the bona fide research exception. If "research" under that exception includes research on *any* subject for *any* reason, the exception would swallow the general rule of non-release; all records requests seek to acquire more knowledge about a subject for some reason. *See State v. Green*, 248 Ariz. 133, 135 ¶ 8 (2020) ("We must strive to construe a statute and its subsections as a consistent and harmonious whole." (cleaned up)); *Salt River Project Agric. Improvement & Power Dist. v. Apache County*, 172 Ariz. 337, 342 (1992) (noting that common sense has a role in statutory interpretation). Therefore, the context in which "research" is used requires us to limit what constitutes "research" based on the subjects researched and the reasons for doing so. *See Reynolds*, 170 Ariz. at 234.

¶16　　　　We find these limitations by considering APS's role and the content of its records. A "program goal" for APS is to facilitate the delivery of social services to "resolve problems of abuse, exploitation or neglect of a vulnerable adult." § 46-451(A)(10). To that end, APS receives and evaluates reports of abuse, exploitation, and neglect and connects vulnerable adults with needed protective services. *See* §§ 46-451(A)(10); -452(A); -454(A), (D)–(G); -459(A). APS records involve or reflect those efforts, and any research meaningfully benefitting

from review of these records would logically concern a study of one or more topics underlying APS's program goal for the purpose of analyzing data and arriving at conclusions. Enabling research on these topics also advances APS's program goal because any fruitful results could illuminate better ways to protect vulnerable adults.

¶17 The context in which "research" is used in § 46-460(D)(8) also suggests that records requests for research must concern *topics* rather than target particular people. The bona fide research exception only permits researchers to obtain records "if no personally identifying information is made available," unless the ADES director permits release of information essential to particular research. § 46-460(D)(8). This qualification shields the identities of vulnerable adults; anyone who reports abuse, exploitation, or neglect; and anyone involved in providing protective services, including APS employees. *See* § 46-460(A). Consequently, a researcher cannot ask for and obtain records concerning particular people, as the identities of those involved would necessarily be revealed. Similarly, a researcher cannot obtain records concerning particular providers or incidents if those records would necessarily reveal personal identities, even if ADES redacted names and addresses. For example, a researcher seeking all APS records involving a small group home may not fall under the bona fide research exception, if compliance would necessarily identify vulnerable adults; persons who reported abuse, exploitation, or neglect; or group home workers. Nor would a request for all APS records involving a publicly reported incident at a nursing home, if production would necessarily identify the persons involved. However, a researcher could seek APS records reflecting reports of financial exploitation of vulnerable adults over the age of sixty, if personally identifying information is withheld to protect the identities of vulnerable adults, those who reported the exploitation, or those who provided services.

¶18 Limiting "research" topics to reporting or stopping the abuse, exploitation, or neglect of vulnerable adults—and restricting research to topic categories rather than particular people—preserves § 46-460(A)'s directive to generally maintain the confidentiality of APS records while simultaneously giving meaning to the bona fide research exception.

¶19 ADES argues we should further limit "research" to helping ADES improve its operations because this would be consistent with the

statutory objective of maintaining APS record confidentiality except in very narrow circumstances. But nothing in § 46-460 supports this view. Subsection (D)(8) applies to "any" bona fide research without confining that research to helping ADES.

**¶20** Conversely, in A.R.S. § 8-807, which addresses the production of records maintained by the Department of Child Safety, the legislature limited a similar bona fide research exception to research "which might provide [Department of Child Safety] information that is beneficial in improving the department." § 8-807(F)(2). The legislature's failure to include similar language in § 46-460(D)(8) further evidences an intent that the bona fide research exception here can be for any study of the topics underlying APS's program goals, whether or not the study helps ADES. *See Columbus Life Ins. Co. v. Wilmington Tr., N.A.*, 255 Ariz. 382, 386 ¶ 18 (2023) (pointing out that statutes explicitly voiding certain contracts demonstrates "that the legislature knows how to deem a contract void when it so wishes and did not do so" in the statute at issue).

**¶21** Also, other § 46-460 exceptions and § 46-461 address efforts to help ADES. Section 46-460(D)(2) permits a release of APS records "[w]hen necessary for purposes that are directly connected with the administration of adult protective services." Section 46-460(D)(5) allows release to "[a]ny statutorily created team that is mandated to review adult protective services and the clients served in the completion of the official duties." This provision apparently refers to a multidisciplinary team created under § 46-461, which works "to better enable the department to carry out its adult protection functions and to meet the community's needs for adult protection services." *See* § 46-461(B). Indeed, § 46-461(C) authorizes APS to release to team members "all information or records that are necessary for the official duties" with the client's name generally redacted. Thus, because other statutory provisions expressly authorize release of APS records to help ADES, there is insufficient support for reading that limitation into the bona fide research exception in § 46-460(D)(8).

**¶22** Relatedly, we disagree with the court of appeals that the research must be for "educational, administrative, or scientific purposes." *See Silverman*, 255 Ariz. at 354 ¶ 20. Many research efforts would undoubtedly fall within one of these categories. But applying these modifiers would foreclose research performed for other purposes, such as investigating whether APS uses the best methods in responding to reports

of neglect, abuse, or exploitation. Nothing in § 46-460(D)(8) suggests the court of appeals' limitation, so adopting it would require us to effectively—and impermissibly—rewrite the statute. *See AZ Petition Partners LLC v. Thompson*, 255 Ariz. 254, 260 ¶ 29 (2023) (explaining that adherence to separation of powers compels courts to refrain from changing statutory meaning under guise of interpretation). Although public policy reasons may support this limitation, the legislature must be the body to impose it. *See Seattle Times Co. v. Benton County*, 661 P.2d 964, 966 (Wash. 1983) (addressing statutory provision permitting release of juvenile records to "individuals or agencies engaged in legitimate research for educational, scientific, or public purposes" (emphasis omitted)).

¶23 The court of appeals relied on *Newsday, Inc. v. State Commission on Quality Care for Mentally Disabled*, 601 N.Y.S.2d 363 (Sup. Ct. 1992), to add these limiting modifiers. *See Silverman*, 255 Ariz. at 353–54 ¶¶ 19–20. However, *Newsday, Inc.* is not helpful. There, a single trial court judge found that a "bona fide research purpose" exception to a New York law shielding investigative reports of child abuse exists if requesters are conducting "academic, administrative or scientific research for the purpose of ascertaining the causes of child abuse and methods of alleviating or eliminating the problem." *Newsday, Inc.*, 601 N.Y.S.2d at 365. This finding was unmoored from any language in the statute or legislative history. Instead, the judge relied on the importance of keeping sensitive records confidential and cited language in an analogous mental hygiene law that authorized the release of confidential clinical records to "qualified researchers upon the approval of the institutional review board or other committee specially constituted for the approval of research projects at the [mental health] facility." *Id.* at 364–65 (cleaned up). Neither § 46-460(D)(8) nor any analogous Arizona statute has similar language. Thus, even if the judge in *Newsday, Inc.* correctly interpreted the statute at issue there, we do not find his reasoning persuasive in interpreting § 46-460(D)(8).

¶24 In sum, we conclude that "research" under § 46-460(D)(8) means engaging in a study to acquire more knowledge, discover new facts, or test new ideas concerning reporting or stopping the abuse, exploitation, or neglect of vulnerable adults. "Research" does not include gathering information merely to satisfy a person's curiosity or to report it to others, including news publication subscribers. The researcher must request the records to study reporting or stopping the

abuse, exploitation, or neglect of vulnerable adults with the goal of using the record information to reach conclusions regarding those topics. Also, unless essential to the research and subject to the approval of the ADES director, the bona fide research exception does not entitle a researcher to review records if such review would enable the identification of vulnerable adults, service providers, or reporters of abuse, exploitation, or neglect.

### 2.   What does "bona fide" mean?

**¶25**        Neither party disputes that "bona fide" should be given its plain meaning.   Black's Law Dictionary defines the term as "[m]ade in good faith; without fraud or deceit . . . [s]incere; genuine." *Bona Fide*, Black's Law Dictionary (11th ed. 2019).    The Merriam-Webster Dictionary similarly defines "bona fide" as "genuine," "sincere," and "[m]ade in good faith without fraud or deceit." *Bona Fide*, Merriam-Webster.com, https://www.merriam-webster.com/dictionary /bona%20fide (last visited May 28, 2024).   We adopt these meanings.   A person engages in "bona fide" research when his or her study is both genuine and conducted in good faith.

**¶26**        ADES is authorized to determine whether a person seeking records is engaged in "bona fide" research.    *See* § 46-460(D)(8) (providing that ADES employees "may" release APS records under the bona fide research exception).    To that end, ADES may adopt rules implementing the making, granting, and denying of requests for records under the bona fide research exception.    § 46-460(E).    To our knowledge, no such rules currently exist.    But we caution against requiring detailed information that is unnecessary to determining whether research is "bona fide" and serves merely as a disincentive against requesting records under the bona fide research exception.   *See Carlson*, 141 Ariz. at 491 (reviewing agency decision denying records request for abuse of discretion).    Additionally, we disagree with the court of appeals that a requester must forecast the "expected outcomes" of the research.   *See Silverman*, 255 Ariz. at 355 ¶ 24.   It is illogical, unreasonable, and unnecessary to require researchers to divine advance outcomes about ongoing research to demonstrate that their efforts to arrive at an appropriate outcome are bona fide.

## B. Anyone, Including Journalists, Can Qualify Under The Bona Fide Research Exception.

¶27 ADES argues that § 46-460(D)(8)'s bona fide research exception applies only to persons and entities whom ADES itself authorizes to conduct research, either through a multidisciplinary team created under § 46-461 or through a memorandum of understanding or similar arrangement. It bases this argument on (1) § 46-460(A)'s general prohibition against releasing any APS records; (2) that other exceptions authorize release in narrow circumstances; and (3) ADES's role in protecting vulnerable adults. Consequently, ADES asserts that journalists like Silverman do not engage in "bona fide research" unless ADES authorizes them to do so. Silverman counters that the constitutional protections afforded to a free press support including journalists within the exception. *See* U.S. Const. amend. I; Ariz. Const. art. 2, § 6.

¶28 Journalists who lack ADES research-authorization are not categorically excluded from the bona fide research exception. By its plain terms, the exception applies to "[a]ny person," without limitation. § 46-460(D)(8). By contrast, other exceptions to withholding release of APS records apply to more precisely described recipients. *See* § 46-460(D)(1) ("The client"), -460(D)(4) ("Persons identified by the client"), -460(D)(5) ("Any statutorily created team that is mandated to review adult protective services"). ADES is correct that the First Amendment does not guarantee journalists a "right of special access to information not available to the public generally." *See Branzburg v. Hayes*, 408 U.S. 665, 684 (1972); *see also Houchins v. KQED, Inc.*, 438 U.S. 1, 14 (1978) ("The Constitution itself is neither a Freedom of Information Act nor an Official Secrets Act."). But here, members of the public are given access to APS records to conduct bona fide research. § 46-460(D)(8). As members of the public, journalists enjoy the same access. And interpreting the statute as categorically excluding journalists would raise serious freedom of speech and equal protection concerns. *See* U.S. Const. amend. I (prohibiting laws "abridging the freedom of speech, or of the press"); U.S. Const. amend. XIV, § 1 (prohibiting states from enacting laws that "deny to any person within its jurisdiction the equal protection of the laws"); Ariz. Const. art. 2, § 6 ("Every person may freely speak, write, and publish on all subjects, being responsible for the abuse of that right."); Ariz. Const. art. 2, § 13 ("No law shall be enacted granting to any citizen, class of citizens, or corporation other than municipal, privileges or

immunities which, upon the same terms, shall not equally belong to all citizens or corporations."); *see also State v. Arevalo*, 249 Ariz. 370, 373 ¶ 9 (2020) (requiring courts to give statutes a constitutional construction if possible).

**C. ADES Has Discretion Whether, And On What Conditions, To Release APS Records For Bona Fide Research.**

**¶29** Silverman argues the court of appeals incorrectly concluded that ADES maintains discretion to deny a records request that satisfies the bona fide research exception. *See Silverman*, 255 Ariz. at 355 ¶ 27. We disagree.

**¶30** As explained, § 46-460(D) provides ADES with discretion to release APS records if the request falls within a statutory exception, including the bona fide research exception. § 46-460(D)(8). Nothing in § 46-460, however, eliminates ADES's common-law authority to deny a request if producing the requested records would harm important public policy interests. *See Carlson*, 141 Ariz. at 490–91 (recognizing that public records statutes did not affect an agency's common-law authority to refuse a records request or provide an alternate response in light of "important public policy considerations relating to protection of either the confidentiality of information, privacy of persons or a concern about disclosure detrimental to the best interests of the state"); *see also London v. Broderick*, 206 Ariz. 490, 493 ¶ 9 (2003) (concluding that "sometimes the benefits of public disclosure must yield to the burden imposed on private individuals or the government itself by disclosure"). Indeed, ADES "may adopt rules to implement the purposes of [ADES] and the duties and powers of the director" concerning records requests. § 46-460(E).

**¶31** Thus, for example, ADES may decline a request in full or in part if it is too burdensome for staff to comply; it would infringe on a vulnerable person's privacy rights, despite the redaction of personally identifying information; disclosure would interfere with an ongoing investigation; or the requester would not keep information in the records confidential. *See Carlson*, 141 Ariz. at 490–91; *London*, 206 Ariz. at 493 ¶ 9. However, in exercising this discretion, ADES should consider reasonable alternatives that would simultaneously satisfy the records request while safeguarding the public interest. *See Carlson*, 141 Ariz. at 490–91; *London*, 206 Ariz. at 493 ¶ 9. For example, to further shield the identity of a vulnerable person, ADES could redact from a report the name and address

of the person's group home. Also, if a request were so burdensome that complying with it would interfere with ADES's functioning, ADES could work with the requester to narrow the request. Any abuse of ADES's discretion could be remedied by a court. *See Carlson*, 141 Ariz. at 491.

## D. The Record Here Requires Remand.

¶32 We agree with the court of appeals that the superior court correctly denied ADES's motion to dismiss. *See Silverman*, 255 Ariz. at 355 ¶ 26. Silverman could qualify for the bona fide research exception under § 46-460(D)(8). But because the superior court entered judgment for Silverman on its own initiative, the parties had no opportunity to develop the record to permit us to determine whether Silverman actually qualified under the exception or whether ADES had reason to deny or curtail the request. We therefore reverse the judgment in favor of Silverman and remand this case to the superior court. After giving the parties an opportunity to submit any relevant evidence and make arguments, the court should apply the reasoning in this opinion and decide (1) whether Silverman meets the bona fide research exception in § 46-460(D)(8); and, if so, (2) whether ADES abused its discretion by denying that request.

## CONCLUSION

¶33 For the foregoing reasons, we vacate the court of appeals' opinion. We affirm the superior court's judgment insofar as it denied ADES's motion to dismiss. But we reverse the superior court's judgment for Silverman and remand for further proceedings. ADES requests an award of attorney fees under A.R.S. § 12-1840. Because no party has yet prevailed in this case, we deny ADES's request.